RAILROAD COMMISSION OF TEXAS v. GALVESTON CHAMBER OF COMMERCE ET AL.

Decided June 24, 1908.

1.—Railroad Commission—Freight Rates—Discrimination—Galveston-Houston Differential.

Conclusions of the trial court (from findings of fact held to be supported by the testimony) that the differential, or added freight rate between Galveston and inland points over the rate between Houston and the same points, prescribed by various orders of the Railroad Commission, was, as applied to rates to and from points on the St. Louis, Brownsville & Mexico Railway, an unjust and unlawful discrimination against Galveston and its shippers and an undue and unreasonable advantage to Houston, such as is prohibited by article 4574, Rev. Stats., are sustained, the distances by rail from all points on said line being practically no greater to Galveston than to Houston, and on much of the line less.

2.—Same—Natural Advantages.

It was not the intention of the Legislature to confer upon the Railroad Commission the power to so regulate freight rates as to deprive one locality of the natural advantages possessed by it over a rival commercial point, with a view to equalizing conditions.

3.—Same—Attacking Commission Rates.

The fact that rates from inland points to Galveston, via Houston, may be, on the whole, fixed with justice to Galveston on the basis of the differential, does not justify the application of the same differential to traffic passing directly to Galveston from points equally or less distant therefrom than from Houston, and it was not necessary, in order to show undue preference in the particular rate, to attack the schedules and rates of the Commission in their entirety.

4.—Same—Parties Complaining.

The application of the differential to a certain line of railway may affect the interest of inland shippers on that line, as well as those of the two cities concerned, and such shippers could properly be parties to a proceeding attacking in court the rates fixed by the Commission.

Appeal from the District Court of Travis County. Tried below before Hon. Chas. A. Wilcox.

R. V. Davidson, Attorney-General, Claude Pollard, Assistant, and Hutcheson, Campbell & Hutcheson, for appellants.—The petition should have complained of the Commission rates in their entirety, so that the court, in undertaking to correct, sustain or abolish such schedules and rates, should have before it the entire subject. Rev. Stats., art. 1183; Wright v. Wright, 3 Texas, 181-182; Hale v. Jackson, 3 Texas, 309-311; Caldwell v. Haley, 3 Texas, 318.

The court should have considered the natural advantages of Houston, which have been farmed out and "destroyed" by rates accorded Galveston, over all the other roads, and have made them counterbalance the supposed injustice to Galveston on the Brownsville road. East Tenn., Va. & Ga. R. Co. v. Int. Com. Com., 181 U. S., 1; Int. Com. Com. v. Clyde S. S. Co., 181 U. S., 291; Texas & P. Ry. Co. v. Int. Com. Com., 162 U. S., 233; Int. Com. Com. v. Louisville & N. R. Co., 190 U. S.,

273; Beale & Wyman on R. R. Rate Regulation, secs. 853-4; Judson on Int. Com., sec. 184.

The court erred in its first conclusion of law, that the facts warranted the finding that it was an unjust discrimination. Railroad Commission v. Weld & Neville, 96 Texas, 394; Texas & P. Ry. Co. v. Interstate Commerce Commission, 162 U. S., 205.

*Cochran & Penn,* for appellees.—The service rendered by the Gulf, Colorado & Santa Fe Railway Company and the St. Louis, Brownsville & Mexico Railway in transporting any article of freight between Galveston and any point on the line of said Brownsville railway, not connected with Houston by a single line of railway, or by two or more lines of railway under the same management and control, constitutes a like and contemporaneous service to that rendered in transporting such article of freight between Houston and such point. Rev. Stats., art. 4574; section 2, Interstate Commerce Commission Act, 3 Fed. Stat. Ann., p. 813; Judson on Interstate Commerce, secs. 143, 144, 167.

The orders of the Railroad Commission complained of, in requiring railway companies to charge, for transporting the different commodities between Galveston and points on the line of the Brownsville road, the specified amounts in excess of the rate required to be charged for transporting the same commodities between Houston and such points, constitute an unjust discrimination, as defined in the second paragraph of article 4574, Revised Statutes, in the sense that such orders give to persons, firms or corporations engaged in shipping any such articles or commodities between Houston, or other points in Texas, and points on the line of said railway an undue and unreasonable preference and advantage over persons engaged in shipping similar commodities between Galveston and such points, and give to Houston and other points in Texas, as localities, an undue and unreasonable preference and advantage over Galveston and the different points along the line of said railway, and subject all traffic between Galveston and points along the line of said railway to an undue and unreasonable prejudice and disadvantage. Rev. Stats., art. 4574; section 3, Interstate Commerce Com. Act, 3 Fed. Stat. Ann., 816-7; Interstate Commerce Com. v. Baltimore & O. R. Co., 144 U. S., 300; Interstate Commerce Com. v. Louisville & N. R. Co., 73 Fed., 427; Eau Claire Board of Trade v. Chicago, M. & St. P. Ry. Co., 4 I. C. Rep., 77; Texas Cement Plaster Co. v. St. Louis & S. F. R. Co., 12 I. C. Rep., 74; 17 Am. & Eng. Ency. of Law, 143; Moore on Carriers, 923; Judson on Interstate Commerce, secs. 172, 173, 184.

KEY, ASSOCIATE JUSTICE.—The Galveston Chamber of Commerce, incorporated; Ullman, Lewis & Company, incorporated; S. P. Mistrot, B. Adoue, J. Lobit and David Odem brought this suit against the Railroad Commission of Texas, and the persons composing that body, seeking a decree vacating certain orders and tariff rates made by the defendant, and enjoining their enforcement, insofar as they require the payment of greater charges on freight shipped to or from Galveston to or from points on the St. Louis, Brownsville & Mexico Railway than are permitted to be charged on similar shipments to or from Houston from

the same points. The defendant's answer included exceptions, general denial and specific matters relied on as a defense.

The case was submitted to the trial judge without a jury, and judgment was rendered for the plaintiffs, and the defendants have appealed. The trial judge filed the following findings of fact and conclusions of law:

"*Findings of fact.*—I find that the matters of fact set out in paragraphs 1 to 5, inclusive, of plaintiffs' first amended original petition are true.

"I find that heretofore, to wit, on February 10, 1902, the Railroad Commission of Texas adopted and promulgated its certain order known as 'General Tariff of Class Rates No. 3,' whereby it divided all kinds of freight transported by railroad companies between points in Texas (saving and excepting certain kinds of freight covered by certain orders of said Railroad Commission of Texas, known as Commodity Tariffs) into ten classes, known respectively as Class No. 1, Class No. 2, Class No. 3, Class No. 4, Class No. 5, Class A, Class B, Class C, Class D and Class E, and whereby it fixed and established the freight rates which should be charged by railroad companies transporting commodities belonging to such various classes between different points in Texas, and which such freight rates so fixed and established are now in force, save and except insofar as some of the same have been modified by amendments to said order subsequently made by said Railroad Commission of Texas, and whereby it provided that such railroad companies, for transporting any freight belonging to said Class No. 1 between Galveston and any other point in Texas, should charge seven cents per hundred pounds in excess of the freight rate required to be charged for transporting such freight between such other point and Houston; and whereby it provided that railroad companies transporting any freight belonging to such Class No. 2 between Galveston and any other point in Texas should charge a freight rate of six cents per hundred pounds in excess of the freight rate required to be charged for transporting such freight between such other point and Houston; and whereby it required that railroad companies transporting any character of freight belonging to such class No. 3 between Galveston and any other point in Texas should charge a freight rate of five cents per hundred pounds in excess of the freight rate required to be charged for transporting such freight between such other point and Houston; and whereby it required that railroad companies transporting any character of freight belonging to such Class No. 4, or Class No. 5, or Class A, or Class B, between Galveston and any other point in Texas, should charge a freight rate of three cents per hundred pounds in excess of the freight rate required to be charged for transporting such freight between Houston and such other point; and whereby it required that railroad companies transporting any character of freight belonging to such Class C, Class D, or Class E, between Galveston and any other point in Texas, should charge a freight rate of two cents per hundred pounds in excess of the freight rate required to be charged for transporting such freight between such other point and Houston; and which said provision requiring such different freight rates to be charged for transporting such freight between Galveston and

other points in Texas, in excess of the freight rate between such other points and Houston, are now in force, and applicable to shipments of all commodities belonging to such various classes between Galveston and points on the line of said St. Louis, Brownsville & Mexico Railway.

"That there are certain kinds of commodities not included in such classes above referred to, but such classes do include the great majority of all commodities moved by railway transportation in Texas, and include all kinds of drygoods, clothing, boots, shoes, notions and hats, and practically all kinds of groceries, and practically all kinds of hardware, implements and machinery.

"That heretofore, to wit, on June 1, 1905, the said Railroad Commission of Texas adopted and promulgated its certain order known as Commodity Tariff No. 1-E, whereby it fixed and established the freight rate which should be charged by railroad companies for transporting cotton, cotton linters in bales and cotton pickings in sacks, between points in the State of Texas, and whereby it established certain exceptions to said rates so established, among others being subdivision 3 of section No. 2 of said order, and reading as follows: 'The rates between Galveston, Texas City, Velasco, and all points not otherwise provided for in this section, shall be made by adding six cents per hundred pounds to the rates applying between Houston and the same points,' and which said order and exception were made applicable to and now apply to shipments of cotton, cotton linters in bales, and cotton pickings in sacks between Galveston and points on said St. Louis, Brownsville & Mexico Railway.

"That heretofore, to wit, on March 10, 1899, the said Railroad Commission of Texas adopted and promulgated its certain order known as Commodity Tariff No. 3-A, whereby it fixed and established the freight rate which should be charged by railroads for transporting cotton seed and cotton-seed products, rice bran and rice hulls, linseed cake and linseed meal between points in Texas, and whereby it provided that such railroad companies, for transporting any of such commodities between any point in Texas and Galveston, should charge on cotton seed two and one-half cents per hundred pounds in excess of the freight rate required to be charged between such points and Houston, and to charge on cotton-seed cake, cotton-seed meal and cotton-seed ashes, linseed cake and linseed meal, two and one-half cents per hundred pounds in excess of the freight rate between such points and Houston, and on cotton-seed hulls, rice bran and rice hulls, two and one-half cents per hundred pounds in excess of the freight rate between such point and Houston, and on cotton-seed oil and tank bottoms, two cents per hundred pounds in excess of the freight rate between such point and Houston, and which said rule and order is now in force and applicable to shipments of such products between Galveston and points on the line of said St. Louis, Brownsville & Mexico Railway.

"That heretofore, to wit, on March 10, 1899, the said Railroad Commission of Texas adopted and promulgated its certain order, known as Commodity Tariff No. 10-A, whereby it fixed and established the freight rate which should be charged by railroad companies for transporting wool between points situated in the State of Texas, and whereby it provided that the freight rate on wool between any point in Texas and Gal-

veston should be seven cents per hundred pounds in excess of the freight rate applying between Houston and such point, and that the said order and freight rate so established and promulgated is now in force and applicable to shipments of wool between Galveston and all points situated on the line of said St. Louis, Brownsville & Mexico Railway.

"That heretofore, on March 10, 1899, the said Railroad Commission of Texas adopted and promulgated its certain order, known as Commodity Tariff No. 15-A, whereby it fixed and established the rate which should be charged by railroads for transporting canned goods and vegetables in carload lots between points in Texas, and whereby it provided that the freight rate so charged by such railroads upon shipments of such canned goods and vegetables in carload lots, between Galveston and other points in Texas, should be three cents per hundred pounds in excess of the freight rate charged between Houston and such other point, and which said order and freight rate so established is now in force and applicable to shipments of canned goods and vegetables in carload lots between Galveston and points on the line of said St. Louis, Brownsville & Mexico Railway.

"2.   The St. Louis, Brownsville & Mexico Railway was completed to Algoa and opened for business with Galveston on January 1, 1907. The differential rates complained of in plaintiffs' petition were fixed by the Railroad Commission long prior to the building of the St. Louis, Brownsville & Mexico Railway. That the orders establishing such differential rates applied to all railroads in Texas, and said orders have been continued in force, and upon the building of the Brownsville road such orders applied to it in common with the other railroads of Texas. That the orders fixing the differential rates complained of are now in effect upon the St. Louis, Brownsville & Mexico Railway, and upon all other roads except upon the Gulf, Beaumont & Kansas City and Gulf, Beaumont & Great Northern Railway points, north of Beaumont to Center, inclusive.

"3.   The St. Louis, Brownsville & Mexico Railway has its western terminus at Sam Fordyce and Brownsville, on the Gulf coast, and runs in a northeasterly direction near the Gulf coast line to the town of Algoa, in Galveston County, where said railroad connects with the Gulf, Colorado & Santa Fe Railway, which runs from the city of Galveston through the town of Algoa to other points in Texas; the said St. Louis, Brownsville & Mexico Railway and the said Gulf, Colorado & Santa Fe Railway being connecting carriers, and forming a continuous line between points on the Brownsville road and Galveston. The said Gulf, Colorado & Santa Fe Railway also operates a line of railway from said town of Algoa to the city of Houston. That the distance from Algoa to Galveston, by way of the Gulf, Colorado & Santa Fe Railway, is 24.2 miles; the distance from Algoa to Houston, by way of said Gulf, Colorado & Santa Fe Railway, is 28.4 miles. The International & G. N. Railway Company owns and operates a line of railway from Houston to the town of Anchor, in Brazoria County, connecting at said point with the line of the Velasco, Brazos & Northern Railway Company, which runs from said town of Anchor through the town of Angleton, at which point it connects with said St. Louis, Brownsville & Mexico Railway. The distance from Angleton to Galveston, by way of the St. Louis,

Brownsville & Mexico Railway and the Gulf, Colorado & Santa Fe Railway, is 46.4 miles; that the distance from said town of Angleton to Houston, by way of the Velasco, Brazos & Northern and the International & G. N. Railways, is 44.7 miles.

"4.   That points on the St. Louis, Brownsville & Mexico Railway, when shipments are made over the said road, and the Gulf, Colorado & Santa Fe Railway, are 3.8 miles nearer to Galveston than to Houston. That from Angleton, and points west of Angleton, the distance to Houston over the St. Louis, Brownsville & Mexico Railway, the Velasco, Brazos & Northern Railway and the International & G. N. Railway is 1.7 miles less than the distance to Galveston over the said Brownsville Railway and the Gulf, Colorado & Santa Fe Railway.

"5.   That the topography of the country between Algoa and Galveston and between Algoa and Houston is practically the same, and the cost to the Gulf, Colorado & Santa Fe Railway of carrying freight from Algoa to Houston and Galveston, respectively, is practically the same. That the railway routes from Angleton, by way of Anchor, to Houston, and from Angleton, by way of Algoa, to Houston, are both practical routes, and the cost to the railroads from transporting freight over said respective routes is practically the same.

"That the time and expense required to transport freight from any point on the St. Louis, Brownsville & Mexico Railway to Galveston is practically the same as is required to transport such freight from the same point to Houston; and that the difference in the distance of any point on the St. Louis, Brownsville & Mexico Railway from Galveston and Houston, respectively, is not sufficient to be considered in fixing the freight rates from such point to said respective cities.

"6.   That with the exception of the St. Louis, Brownsville & Mexico Railway, and perhaps one or two others, all of the railways of the State over whose lines freight is carried to or from Galveston, center in or pass through Houston, and freight from points on said lines of railway destined to Galveston, or freight from Galveston destined to points on said railways, in the natural and usual course of transportation, passes through Houston, and by reason of such facts, and the geographical location of Houston and Galveston, freight carried between Galveston and any other point over said lines of railway must be carried about fifty miles farther than it has to be carried between the same point and Houston. Houston and Galveston are connected by the Buffalo Bayou, which affords water transportation between said cities, which water transportation enters into competition with railway transportation between said cities. This competition has resulted in reducing the railway freight rates between Houston and Galveston, and is considered in fixing the differential on shipments to or from Galveston on such railways.

"7.   Based on the facts hereinabove set out, I conclude that some of the controlling factors which must be considered in determining the reasonableness of the orders of the Commission fixing rates from Galveston and Houston over the other railroads of the State to wit:   The fact of the greater distance of Galveston, and the fact that water transportation enters into competition for a portion of the distance, do not exist with reference to the St. Louis, Brownsville & Mexico Railway,

and that, therefore, the conditions on said railway with reference to shipments to Houston and Galveston are dissimilar to the conditions surrounding such shipments over other roads.

"8.   I find that both Houston and Galveston are commercial cities, with large facilities for buying, storing and handling cotton, and are active competitors in the cotton business generally.   That nearly all of the cotton crop of the State finally reaches Galveston for transportation by water, but that much of it is purchased, handled and stored in Houston.   The territory along the St. Louis, Brownsville & Mexico Railway produces only a very small proportion of the wool and cotton crops of Texas.   That Houston and Galveston each has numerous wholesale and jobbing houses engaged in selling to retailers of the State the usual articles of trade and commerce.

"9.   I find that Galveston, Houston, Dallas, San Antonio, and perhaps other points, under the present system of rates, are competing for business, and are doing business, at the points along the St. Louis, Brownsville & Mexico Railway, but that, in order to do business along said road, Galveston pays a higher freight rate for the same distances, and for the maximum distances, than any of the other points so competing.

"10.   I find that the freight rates to Galveston from Atlantic Seaboard points, and from points where water transportation may be used, are less than from the same points to Houston by the following amounts per hundred pounds:

"Less than carloads:   Class 1, seven cents; Class 2, six cents; Class 3, five cents; Class 4, three cents.

"Carloads:   Class 5, three cents; Class A, three cents; Class B, three cents; Class C, two cents; Class D, two cents; Class E, two cents.

"11.   I find that the greater part of the articles of trade and commerce shipped to Houston and Galveston from Seaboard territory are shipped in carload lots, while the greater part of such articles sold and shipped out of Houston and Galveston to the consumers along the St. Louis, Brownsville & Mexico Railway are in less than carload lots.

"12.   I find that a material proportion of the articles of trade and commerce received by Houston and Galveston are from interstate points where water competition does not exist, and upon which Houston and Galveston pay the same freight rate.

"13.   That upon a few articles, such as tobacco and snuff, the manufacturer pays the freight, and such articles are received by Houston and Galveston at the same prices.

"14.   That, taking into consideration the fact that the freight rates to Galveston from Atlantic Seaboard points are less than the rates from said points to Houston, but also considering the fact that most of the freight shipped from such Seaboard territory to Houston and Galveston is in carload lots, and that the greater part of the shipments out of Galveston and Houston to points on the St. Louis, Brownsville & Mexico Railway are in less than carload lots, and that the differential that Galveston is required to pay on less than carloads is higher than the advantage that Galveston enjoys by reason of the lower differential on carload shipments from Seaboard territory; and further considering the fact that a material proportion of the articles of commerce received by

Galveston and Houston are from interstate points, where the freight rates to Houston and Galveston are the same, I find, as a matter of fact, that the wholesale merchants and jobbers of Galveston have to pay a higher total average freight rate from the point of production or manufacture of articles of commerce covered by the class rates, and by Commodity Tariff No. 15-A, than does Houston.

"15. I find that Galveston, by reason of a deep-water port, and by reason of receiving her freight from Seaboard territory at a less freight rate than Houston, and by reason of being situated as near by a practical route to points on the St. Louis, Brownsville & Mexico Railway as Houston, has a natural advantage over Houston in competing for trade along said road, which natural advantage has been destroyed by the differential rates complained of.

"16. That there are no conditions of competition with other railroads from points along the St. Louis, Brownsville & Mexico Railway to Houston that would render necessary the charging of a less freight rate to Houston than to Galveston, and that the maintenance of a larger freight rate to Galveston over said railroad is not rendered necessary by the financial condition of said road, or of other roads reaching such points.

"17. That the regulations and orders of the Railroad Commission fixing the differentials complained of in this case, insofar as such regulations and orders apply to shipments to or from Galveston and points on the St. Louis, Brownsville & Mexico Railway, and shipments to or from Houston and points on the St. Louis, Brownsville & Mexico Railway are unreasonable and unjust to the plaintiffs in this case, and to all persons shipping freight to which said differentials apply, to or from Galveston and points on said road.

"18. That the shipment of freight over the St. Louis, Brownsville & Mexico Railway from points on said road, destined to Galveston, and the shipment of freight originating at Galveston over said road to points on said road, is a like and contemporaneous service to similar shipments over said road destined to or originating at Houston, and that road is required by the differential fixed by the Railroad Commission to charge and collect a greater compensation for such shipments over its road to and from Galveston than it is required to charge and collect on like shipments over said road, for the same distance and service, where such shipments are to or from Houston.

"19. That the charging of such higher rate to Galveston than to Houston, for like shipments, gives an undue and unreasonable preference and advantage to the city of Houston and to persons, firms and corporations shipping freight between the city of Houston and points on the St. Louis, Brownsville & Mexico Railway, over the plaintiffs, and the city of Galveston, and all persons, firms and corporations shipping freight between the city of Galveston and the same points on said road.

"*Conclusions of law.*—1. I conclude that the rules and orders of the Railroad Commission of Texas, complained of in plaintiffs' petition, requiring a higher freight rate to be charged from points on the St. Louis, Brownsville & Mexico Railway to Galveston than to Houston, constitute

an unjust discrimination, as defined in the first clause of article 4574, Revised Statutes, and also as defined in the first section of said article.

"2. That said rules and orders of the Railroad Commission providing that a greater freight rate should be charged on the various commodities as hereinbefore set out, between Galveston and the various points on the line of the St. Louis, Brownsville & Mexico Railway Company, and between Houston and such points, should be vacated and set aside, and that the Railroad Commission of Texas should be enjoined from enforcing or attempting to enforce the said rates, and should be enjoined from in the future making or promulgating any orders requiring that a higher freight rate shall be charged for transporting any of such commodities between Galveston and any point on said St. Louis, Brownsville & Mexico Railway Company than between Houston and such points, with the exception of points along the line of said St. Louis, Brownsville & Mexico Railway from which a single line of railway extends to the city of Houston, or from which any two or more lines of railway under the same management and control extend to the city of Houston. Judgment accordingly."

*Opinion.*—It is not deemed necessary to set forth and consider separately the various assignments of error presented in the brief filed on behalf of appellants. It is sufficient to say that in the court below, and in this court, the appellants have been represented by diligent and able counsel, who have presented and urged every supposed defense.

Appellees based their case upon article 4574 of the Revised Statutes, which, so far as applicable to this case, reads as follows:

"If any railroad subject hereto, directly or indirectly, or by special rate, rebate, drawback or other device, shall charge, demand, collect or receive from any person, firm or corporation a greater or less compensation for any service rendered or to be rendered by it than it charges, demands, collects or receives from any other person, firm or corporation for doing a like and contemporaneous service, such railroad shall be deemed guilty of unjust discrimination, which is hereby prohibited.

"1. It shall also be an unjust discrimination for any such railroad to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or to subject any particular description of traffic to any undue or unreasonable prejudice, delay or disadvantage in any respect whatsoever."

The trial court evidently held that the rules and orders of the Railroad Commission requiring a higher freight rate to be charged to and from points on the St. Louis, Brownsville & Mexico Railway to Galveston than to and from Houston, constitute an unjust discrimination, as defined in the first clause, and also as defined in the first subdivision of the statute quoted. Of course it is not, and could not successfully be, contended that the Railroad Commission can nullify these provisions of the statute and authorize railroads to disregard them. Hence it follows that, if the court was correct in either of the conclusions referred to, the judgment must be affirmed. After a careful and extended consideration we have reached the conclusion that the court's findings of fact are supported by testimony, and that its conclusion of law, that the rules and orders complained of constitute an unjust discrimination, as

defined in the first subdivision of article 4574, is correct. This being the case, the judgment must be affirmed, and we express no ruling as to the other point decided by the trial court.

We realize the fact that rate-making is one of the most important and complicated problems involved in the business of railway transportation; and we are also aware of the fact that the Legislature, when it authorized suits of this character to be instituted, placed the burden of proof upon the party complaining to show, by clear and satisfactory evidence, that the orders, rates or other acts of the Railroad Commission complained of are unreasonable and unjust. Nevertheless, when such a case is presented to the courts, if the proof shows that the order, rate or other act complained of gives any undue or unreasonable preference or advantage to any person, company, firm, corporation or locality, then the party complaining is entitled to relief at the hands of the court.

The uncontroverted testimony in this case shows that there is practically no difference in distance from Galveston to any point on the St. Louis, Brownsville & Mexico Railway and from Houston to the same point on the same road, and that there is no difference in the cost of transporting freight to or from Galveston or Houston to any point on that road. It also appears with equal certainty that Houston and Galveston are commercial rivals. In fact, while this suit was brought by individuals as plaintiffs, and against the members of the Railroad Commission as defendants, it is frankly conceded to be in the main a contest between localities, each of which is a city doing a large volume of commercial business. This being the situation, as shown by clear and undisputed testimony, and it being shown by like testimony that the acts of the Railroad Commission complained of require materially higher freight rates to be paid on shipments of freight to and from Galveston than are paid for similar shipments to and from Houston to points on the railroad referred to, it seems to us that the orders and rates complained of must be held to give an undue and unreasonable preference and advantage to Houston over Galveston. It is no answer to this to say that Galveston has natural advantages not possessed by Houston, and therefore, notwithstanding the difference in freight rates, it can hold its own in a commercial contest with Houston. We do not believe that it was the intention of the Legislature, in creating the Railroad Commission and vesting it with power to make and regulate rates and charges, to confer upon that body authority to make discriminations for the purpose of offsetting natural and other advantages possessed by localities and individuals. In fact, the first subdivision of article 4574 was modeled after and is substantially the same as the third section of the Act of Congress known as the Interstate Commerce Act, and in construing that Act it has been repeatedly held that each locality is entitled to its natural advantages. (Judson on Interstate Commerce, sec. 184, and authorities there cited; Interstate Commerce Commission v. Baltimore & O. R. R. Co., 145 U. S., 263; 36 L. Ed., 706.)

In the case of Eau Claire Board of Trade v. Chicago, M. & St. P. Ry. Co., 5 I. C. Rep., 293, the Commission, in an opinion by Commissioner Knapp, discussing the proposition as to whether or not rates should be so fixed as to "equalize commercial conditions," says: "That rates should be fixed in inverse proportion to the natural advantages of

competing towns, with the view of 'equalizing commercial conditions,' as they are sometimes described, is, a proposition unsupported by law, and quite at variance with every consideration of justice. Each community is entitled to the benefits arising from its local and natural advantages, and any exaction of charges unreasonable in themselves, or relatively unjust, by which those benefits are neutralized or impaired, contravenes alike the provisions and the policy of the statute."

In the case of Interstate Commerce Commission v. Louisville & N. R. Co., 73 Fed., 409, the court, on page 427, holds that the object of the Interstate Commerce Commission Act was not to regulate conditions between financial and business conditions, and results incidental to them, but was leveled at arbitrary conditions and inequalities in the rates and methods of doing business of the carrier, and says: "If the Interstate Commerce Commission should undertake to regulate so vast a business as that of the commerce of the country so as to overcome social, business and financial inequalities and conditions, the Act would at once become nugatory in the difficulties which would attend its execution."

Furthermore, there is another phase of this question which should not be overlooked. If, on account of natural advantages, and as a result of according to Galveston the same freight rates that are allowed to Houston, Galveston should become a better market than Houston for the merchants and producers along the line of the St. Louis, Brownsville & Mexico Railroad, then equalizing the rates complained of would inure to the benefit of others besides Galveston. Thus it would seem that the controversy in hand reaches beyond the rival interests of Houston and Galveston, and affects the merchants, producers and consumers along the line of an extended and important railroad.

What has just been said answers the contention that no judgment should have been rendered in favor of the plaintiff Odem, a merchant engaged in business at a point on the St. Louis, Brownsville & Mexico Railroad.

But it is earnestly insisted on behalf of appellants that the rates here complained of constitute part of an entire system of rates established by the Railroad Commission, and that in fixing all the rates Galveston was accorded certain substantial advantages and benefits, and that when all the rates are considered, and a total balance cast, Houston has no advantage over Galveston. As to the differentials established by the Railroad Commission on shipments passing through Houston to Galveston, the contention referred to may be sound, but that question is not involved in this case. The rates complained of in this case have no application to and are not placed upon shipments via Houston to Galveston. The complaint here is that upon shipments to and from Galveston, via Algoa, and to and from Houston to the same points on the St. Louis, Brownsville & Mexico Railroad, Galveston is required to pay higher freight charges than Houston, although the distances and cost of transportation are the same.

It is also contended that any change in the rates complained of would result in a disastrous disturbance of the entire system of freight rates throughout the State. We fail to see the force of this contention. The Railroad Commission has ample power to change any rate it has made,

and, having such power, we do not believe that the change of any rate fixed by that body would necessarily result in disaster.

As illustrating the absurdity of the judgment appealed from, it is pointed out in appellants' brief that, if the rates complained of are reduced, two shipments may leave Galveston on the same train on the Gulf, Colorado & Santa Fe Railway, one being deflected at Algoa and going west on the St. Louis, Brownsville & Mexico Railroad a distance of 100 miles, and the other going north on the Gulf, Colorado & Santa Fe a like distance, the first paying a less rate of freight than the second. The condition referred to is already in existence under the rates complained of, because, under these rates, two shipments may leave Sinton, or any other point between Sinton and Algoa, on the same train, one destined to Houston and the other to Galveston, and each will be carried at a different freight rate. But if the illustration given in appellant's brief should result in giving an unjust and unreasonable advantage or preference to one locality over another, then it would be the duty of the Commission, in the exercise of its authority, to so adjust the rates as to prevent that result.

On the whole, our conclusion is that the judgment should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.