## EX PARTE S. L. GARLAND.

No. 21794. Delivered October 15, 1941.

The opinion states the case.

*Jack C. Burroughs,* of Dallas, for relator.

*W. Ray Scruggs,* of Houston, amicus curiae.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Relator is held herein under and by virtue of a warrant issued under a complaint charging him with a violation of Senate Bill No. 301 of the Acts of the Regular Session of the 47th Legislature, page 606, Vernon's Texas Law Service 1941, known as "Transportation Agents—Regulation." Upon being thus held, the relator sued out a writ of habeas corpus, and same was heard and he was remanded to the custody of the Sheriff of Dallas County, and is here upon appeal from such order.

The statement of facts in this case shows:

"That appellant operates a travel bureau in Dallas, Texas. That he keeps two registers. In one of these is registered the names and addresses of persons who desire to share the expense of travel with some person owning an automobile and going to a point which the registrant desires to go. In the other register are persons' names who are going by automobile to points within and without the State of Texas, and who would like to have someone accompany them and share a part of the necessary expenses. Appellant's business is that of bringing the two persons together, and if these parties agree with each other upon the division of the expenses of the trip under consideration, the appellant is paid a fee, the amount of which is dependent upon the length of the trip, as his compensation for his services in introducing the parties to each other. Appellant collects nothing from the car owner and has nothing to do with the share-expense agreement; he makes no representations and gives no guaranties in regard to the course or the conduct of the trip but allows the two parties to make their own contract and to agree upon such terms as they may desire. In the event the parties do not agree upon a consideration or the route that they are to take, or in other words, if they do not travel with each other, appellant is paid nothing for his services in introducing the parties, but if they do make an agreement between themselves, then appellant is paid a small fee for his services."

The matter of the regulation of so-called "transpostation agents" by two different statutory enactments has twice before been the subject of litigation in this court, and has been written upon in two exhaustive opinions by the late lamented Judge Lattimore, in both of which opinions he has held the act unconstitutional on varied and numerous grounds.

The present Act, S. B. No. 301, defines persons acting as relator is here shown to be acting as transportation agents, provided such person does not hold a certificate of convenience and necessity from the Railroad Commission of Texas. Section 2 of said Act requires a license to act as such transportation agent from such Commission.

Sec. 3 provides certain requisites as to the fitness, willingness and ability of the applicant before a license will be granted. He shall only do business where such granted license is posted up in a prominent place in such place of business, and if desiring to do business in more than one location, he shall procure a license for each place.

Sec. 4 provides for a payment of $100.00 for each location's license.

Sec. 5 provides that the agent shall be required to furnish to and file with the Commission a bond in the sum of One Thousand Dollars, conditioned that the applicant will faithfully perform all the duties and undertakings of a transportation agent, and such bond shall be for the benefit of the State of Texas, as well as for all persons dealing with such agent; any person who suffers injury or damages by reason of any negligence of such agent, or by reason of the breach by such agent of any of the conditions of his license, or any of the duties imposed upon him by this Act, may bring suit in any court of competent jurisdiction in any county wherein such injury or damages may have occurred, and recover upon such bond; provided that if any such bond shall for any reason be cancelled, annulled, exhausted or partly exhausted, then such license shall stand suspended until an additional bond of like amount and tenor shall be filed with the Commission and approved by it.

Sec. 6 provides that an exact record of all transactions shall be kept by the agent for not less than two years of (1) the amount paid to them by each person transported, and the name of such person; (2) the point of destination; (3) the name of the motor carrier; (4) name of the driver of the vehicle used, and (5) license number or other identification plate number, and make and motor number of the vehicle. By the 10th of each month such agent shall file with the county clerk of the county in which he is licensed a verified copy of the above record for the preceding month and such records shall be kept by the clerk for a period of two years, and shall be a public record open to inspection by the public.

Sec. 7 provides for all license fees hereunder to be placed in the Treasury in a certain fund.

Sec. 8 contains the penal clause for acting as such agent without procuring such license.

Sec. 9 provides that the Commission may after notice and hearing, in its discretion, cancel any license issued hereunder, for the violation of this or any other statute of this State, the violation of any lawful order, rule or regulation promulgated by the Commission under authority hereof, or for the failure of any agent to discharge any and all claims or demands of any member of the public for which such agent may be legally liable by reason of any act of such agent in selling, providing, procuring, contracting or arranging for such transportation, information or introduction under the terms of this Act.

Sec. 10 provides the right of appeal to the district court of Travis County of any person dissatisfied with any decision, rule or order of the Commission.

Sec. 11 is the repealing clause of any laws in conflict here-with.

Sec. 12 is the saving clause. If any clause, section or phrase herein be invalid, then it is declared to be the intention of the legislature to have passed the remaining clauses and sections, regardless of such invalid portions thereof.

Sec. 13 is a declaration of policy. "The Legislature declares that it is its policy to so regulate the action of transportation agents and persons selling and arranging for transportation by the parties traveling by motor vehicles upon the highways of the State of Texas as to afford the maximum amount of protection to the traveling public, without undue interference with the rights of individuals; it being understood that this Act is not intended to legalize or authorize anyone not holding a certificate of convenience and necessity from the Railroad Commission to transport passengers for compensation, to regularly engage in the transportation business, or to perform the services of a common carrier."

Sec. 14—The emergency clause:

"The fact that passengers are often stranded by drivers of

cars to whom they have paid money for transportation and other fees or commissions for being brought into contact with the drivers of such cars, and that this often occurs when such passengers are far from home and friends, and left to complete their journey any way they can; that passengers, after beginning a journey, are often required to pay additional money or buy supplies in order to complete their journey; that passengers are often carried over long and circuitous routes contrary to representations made to them; that there has developed a class of irresponsible persons who operate automobiles from place to place with no destination and no motive except to transport persons as passengers for hire, who have no insurance to protect a passenger for personal injury or loss or damage to property, and who are unable to respond in damages; that passengers are subjected to indignities and insults; that irregularities, abuses, and injuries to the traveling public have arisen which are dangerous to the welfare, health, morals, and safety of the general public; and that the regulation of transportation agents is essential and necessary to the proper regulation of motor bus transportation, creates an emergency and an imperative public necessity that the Constitutional Rule requiring all bills to be read on three several days be suspended, and said Rule is hereby suspended, and that this Act shall take effect and be in full force and effect from and after its passage, and it is so enacted."

It is contended by the relator that the requirements of this bill are (1) Unreasonable; (2) that they are impossible of performance; (3) that they are without fair application; (4) that they are prohibitive; (5) that they deprive citizens of their property without due process of law; (6) that they attempt to subject a purely private occupation to regulations applicable to those of a public character; (7) that such act forbids and attempts to prohibit an occupation, innocent in itself, and which works no harm to the public or any member thereof; and that such act makes an unfair and arbitrary discrimination against persons situated in relator's position and common carriers, and attempts to regulate a person as a common carrier when he is not such in fact.

This is not newly attempted legislation. At the First Called Session of the 43rd Legislature, in the year 1933, there was passed as Chapter 114, p. 316, a statute, its evident purpose being the licensing of "travel bureaus" and share the expense travelers in this State. That statute was before this court in

the case of Ex parte Martin, 74 S. W. (2d) 1017. The facts in the Martin case are startingly similar to the facts in this instant case. We quote from the Martin case:

"The facts were heard in the trial court and appear without controversy. Appellant conducted a travel bureau; had an office; kept there a register in which he registered persons desirous of making share-expense trips to points in and out of Texas; also of persons owning or operating cars who expected to make trips in said cars to named places, and wished contact with persons wanting to go to or through such places, who would be willing to share the expenses of such trip. Fees were collected by appellant when such parties, upon being brought together through him, came to terms as to such trips; otherwise appellant got nothing. He had nothing to do with the contracts or the terms thereof entered into between the share-expense trippers. He neither owned nor operated the cars to be used; nor made representations or gave guaranties concerning same. His services were complete when he brought the parties together. In the particular transaction involved, Evans registered with appellant as desirous of going to Phoenix, Ariz.; on the same day Brown, a private citizen living in Iowa, and not engaged in transporting passengers for hire over the highways, registered with appellant as going in his car to California. Appellant brought the two men together, and they made their own arrangements as to their expenses, and paid appellant $1 for his services in bringing them together."

We therein held that the act of 1933, among other things, attempted to subject a purely private occupation to regulations applicable only to those of a public character; that it attempted in effect to prohibit an occupation, innocent in itself, which works no harm to the public or any member thereof, and is an attempt to deprive a citizen of his property without due process of law; and we might add that such was an unwarranted interference with one's private right of contract without the same coming within the domain of police regulation.

Again, the 44th Legislature, in 1935, passed Senate Bill No. 265, which is now found in Vernon's Texas Civ. Statutes 1936, as Art. 911c. This act was also before this court in the case of Ex parte Talkington, 104 S. W. (2d) 495, and this court held in such case that there was no substantial difference presented in the facts of the Talkington case and the Martin case, supra. In the Talkington case it is noted that the bond provided for in

Section 5 of this last act is also provided for in the 1935 act, which was the basis of the prosecution in the Talkington case, and the language there used in so far as it goes is very similar to the present case, except that the present act is more onerous and burdensome, and more unreasonable than the bond in the 1935 enactment. The presently demanded bond is rather wide in its scope and reads in part as follows: "Such bond shall be for the benefit of the State of Texas as well as for all persons dealing with such transportation agent. Any person who suffers injury or damages by reason of any negligence of a transportation agent, or by reason of the breach by any transportation agent of any of the conditions of his license, or any duties imposed upon such transpartation agent by the terms of this Act, may bring suit in any court of competent jurisdiction in any county wherein such injury or damages may have occurred, and recover upon such bond. Provided further, that if any such bond shall for any reason be cancelled, annulled, exhausted, or partly exhausted, then the license of such transportation agent shall stand suspended until an additional bond of like amount and tenor shall be filed with and approved by the Commission." It authorizes a suit for damages in any county of the State for any act of negligence of the agent, or any violation of any conditions of his license; or any breach of any portion of his contract, or of any failure to perform any duty imposed upon the agent by the terms of this Act, and if any recovery be had in any county of the State upon this bond, no matter how inconsequential the recovery, then it requires the immediate cessation of business by such agent until the filing of a new bond in the original amount before resuming business. This demanded bond, in the Talkington case, supra, was held to be an unreasonable requirement, and one that was practically impossible to comply with. That such an onerous undertaking could not be complied with by obtaining a surety bond therefor is shown in this case by the proof. No surety would enter into an undertaking that would subject itself to have to defend grievances, either real or fancied, in anyone of the 254 counties of this State; based upon such a wide and indeterminate condition as is found in this section. We think such paragraph is unreasonable as well as uncertain.

It is also noted that Section 9 of this Act provides after notice and hearing, the Commission may cancel any license issued thereunder for the violation of this or any other statute of this State, the violation of any lawful order, rule or regu-

lation promulgated by the Commission under authority thereof, or for any failure of any agent to discharge any and all claims and demands of any member of the public for which any agent may be liable by reason of this Act in selling, providing, procuring, contracting or arranging for such transportation, information or introduction under the terms of this Act. This section would make the cancellation of this license depend upon such an agent observing *all* the laws of this State, whether connected with his business of getting two or more travel-minded persons together, or any other of the many statutes that are found in the books as the result of the labors of the past or present legislatures. This is hardly fair to such licensee, and is vague, indefinite and uncertain, especially as it relates to the orders, rules or regulations of the Commission, and the claims or demands of any member of the public.

It is evident from the declaration of policy and the emergency clause that the legislature was endeavoring to make an innocent business of causing one travel-minded person to meet with and possibly make a contract with another such person a business of public concern, and to cause the person responsible only for such two travelers meeting each other to become responsible for practically every conceivable injury that one of such persons could cause his fellow traveler, whether such injury arose out of or was incident to the traveling contract or not, or whether such act was the reasonable and necessary concomitant that went with such contract, or whether such complained of act necessarily arose out of their contract, or out of their having been caused to meet the so-called agent.

We do not think the legislature had the power to cause such an innocent act to become fraught with so great possibilities and relate the same to the act of the agent. It can not change the elements of that which is right and by its sanction make it a wrong that menaces the safety of society to such an extent that its punitory powers are called into service for its regulation, thus attempting to make relator respond in damages for acts with which he had in anywise no connection, nor which acts he could not reasonably foresee by the exercise of reasonable diligence.

We are of the opinion that such business is but an innocent one of getting two or more people in communication with each other in order that they might enter into a private contract relative to traveling, and whatever contract they might agree upon would be a private matter not affecting the general pub-

lic, and not susceptible to an exercise of the police power of the State. Further we think in any event that the rules prescribed in this Act relative to the giving of a bond, and the undertakings demanded thereunder, are unreasonable, arbitrary and prohibitive; that the portion of such Act requiring the filing of certain records in the county clerk's office is unreasonable and unfair to be demanded of any such private business, and would result in making a public business out of a private undertaking; that the provisions of said Act wherein the violation of any State law could be used by the commission as a reason for the cancellation of such license are vague, indefinite, uncertain and arbitrary, and should be held unenforceable. See Hess v. Denman Lumber Co., 218 S. W. 162; Williams v. Baldwin, 228 S. W. 554. As was said by Judge Lattimore in the case of Ex parte Talkington, supra, such requirements as were there presented (which are substantially here presented in this Act) were unreasonable, impossible of performance, without fair application, and prohibitive, and were violative of relator's rights under the Constitution.

Under the reasoning laid down in the cases of Ex parte Martin, 74 S. W. (2d) 1017, Ex parte Talkington, 104 S. W. (2d) 495, and Talbott v. State, 75 S. W. (2d) 1116, we hold that this Act, S. B. No. 301, is violative of relator's rights under Art. 1, Section 19, of our State Constitution, and the Fourteenth Amendment due process clause of the Federal Constitution. Therefore the judgment is reversed and relator ordered discharged.