**FOSTER et al. v. RAILROAD COMMIS-
SION et al.**

**No. 9751.**

Court of Civil Appeals of Texas. Austin.

Nov. 3, 1948.

Weatherly & Weatherly, and Gerald Weatherly, all of Alice, for appellant.

Price Daniel, Atty. Gen., and Charles D. Mathews and Jesse P. Luton, Jr., Asst. Attys. Gen., for Railroad Commission of Texas.

A. M. Felts, of Austin, for Union Bus Lines, Inc.

HUGHES, Justice.

L. J. and Y. C. Foster, appellants, doing business as the Clipper Cab Company, applied to the Railroad Commission for a certificate of convenience and necessity authorizing them to conduct and operate their business over all streets, roads and highways of Brooks County, in which county there is no incorporated city or

town and no part of any such city or town. This application was denied and on appeal to the lower court the order of denial was sustained.

Appellants, for some time, have been engaged in operating taxicabs over all the roads, streets and highways of Brooks County, and they admit that the certificate applied for is sought to protect themselves against "injurious competition."

It is our opinion that the Legislature has not authorized the Railroad Commission to issue certificates of convenience and necessity of the character applied for by appellants and for this reason the judgment of the trial court must be affirmed.

■ The Railroad Commission has only such jurisdiction and authority as may be conferred upon it by the Legislature. Railroad Commission of Texas v. Red Arrow Freight Lines, Tex.Civ.App., 96 S.W.2d 735 (Austin Tex.Civ.App. Writ Ref.).

Subdivision (c), Sec. 1, Art. 911a, Vernon's Ann.Civ.St., defining the term "Motor Bus Company," as used in the Motor Bus Transportation Act, is relied upon by appellants as empowering the Commission to regulate taxicabs outside of incorporated cities and towns and their suburbs. The material part of such definition reads:

"The term 'Motor Bus Company' when used in this Act means every corporation or persons as herein defined, their lessees, trustees, receivers, or trustees appointed by any court whatsoever, owning, controlling, operating or managing any motor propelled passenger vehicle not usually operated on or over rails, and engaged in the business of transporting persons for compensation or hire over the public highways within the State of Texas, whether operating over fixed routes or fixed schedules, or otherwise."

■ This language, standing alone, is broad enough to include the operation of taxicabs. It does not stand alone. It is only a part of a very comprehensive law providing for the regulation of motor bus transportation by the Railroad Commission. In construing an act of the Legislature, it is our duty to examine the entire act and construe it as a whole. Anderson v. Penix, 138 Tex. 596, 161 S.W.2d 455. When this entire act is examined we find that few of its provisions fit the type of service rendered by taxicabs.

Section 2 of Art. 911a provides, in part:

"All motor-bus companies, as defined herein, are hereby declared to be 'common carriers' and subject to regulation by the State of Texas, and shall not operate any motor propelled passenger vehicle for the regular transportation of persons as passengers for compensation or hire over any public highway in this State except in accordance with the provision of this Act."

Subdivision (a) of Sec. 4 of said Article makes it the duty of the Commission to "supervise and regulate the public service rendered by every motor bus company" and to fix or approve the maximum, or minimum, or maximum and minimum, fares, rates or charges of and to prescribe all rules and regulations necessary for the government of, each motor bus company; "to prescribe the routes, schedules, service, and safety of operations of each such motor bus company; * * *."

Subdivision (b), Sec. 4 of the Act, provides that the Commission has the authority to "supervise, control and regulate all terminals of motor bus companies, including the location of facilities and charges to be made motor bus companies for the use of such terminal * * *."

Subdivision (e), Sec. 4 of the Act, provides that: "It shall be unlawful for any motor bus company to sell any tickets for the transportation of passengers within this State over any motor bus line at any rates other than the rates authorized and approved by the Commission under the terms of this law; * * *."

Section 5 of the Act provides that "No motor-bus company shall hereafter regularly operate for the transportation of persons as passengers for compensation or hire * * *," without procuring a certificate of public convenience and necessity.

This Section in providing for a sale or transfer of a certificate issued under the

Act provides that the Commission may disapprove the sale or transfer, if the assignee is unable to "render the service demanded by the public necessity and convenience on and along the designated route."

Section 7 of the Act provides that the Commission shall ascertain and determine if a "particular highway or highways designated in said application" are fit for the use contemplated by the application.

Section 8 of the Act provides that:.

"No application for certificate shall be considered by said Commission except that it shall be reduced to writing and set forth the following facts:

\* \* \* \* \* \*

"(b) The complete route or routes over which the applicant desires to operate, together with a brief description of each vehicle which the applicant intends to use, including the seating capacity thereof.

"(c) A proposed time schedule and a schedule of rates showing the passenger fares to be charged between the several points or localities to be served."

A more incongruous set of laws for the regulation of taxicabs could hardly be devised. None of the provisions of Art. 911a are peculiarly appropriate to taxicabs. Many of its provisions, as we have shown, are most inappropriate.

We also attach significance to the words "regular transportation" and "regularly operate" in Sections 2 and 5, supra, as indicating that the Legislature intended that only "regular" transportation operations should be the subject of regulation under Art. 911a. "Regular" is defined in Webster's International Dictionary as meaning: "Returning or recurring at stated or fixed times or uniform intervals; operating at proper intervals." Taxicabs do not so operate.

When Art. 911a, providing for the regulation of transportation of persons for compensation, is compared with Art. 911b, V.A.C.S., providing for the regulation of transportation of property for compensation, it is readily seen that in the latter statute the Legislature clearly contemplated and made specific provision for the regulation of motor carriers operating over irregular routes and on irregular schedules. The absence of similar provision in Art. 911a induces the conclusion that the Legislature did not intend to regulate the character of transportation engaged in by appellants.

Further evidence of this holding is found in an act passed by the Legislature in 1941 regulating transportation agents. Acts of 47th Leg., Reg.Sess., p. 606, Vernon's Ann.Civ.St. art. 911e.*

Subdivision (c), Sec. 1 of the Act, defined the term "transportation agent" and limited the scope of the act to instances, "where said transportation is to be performed by the use of motor vehicles by persons, firms, corporations, associations, including lessees, trustees and receivers, *not* holding a certificate or certificates of convenience and necessity from the Railroad Commission of Texas."

This language constitutes legislative recognition of the fact that previously enacted Art. 911a did not require certificates of convenience and necessity from the Railroad Commission in all cases where persons were transported over the highways of this State for compensation. It amounts to a legislative construction of Art. 911a consistent with our own.

■ The interpretation which we have placed upon Art. 911a is advocated not only by the Railroad Commission but by intervenor Union Bus Lines, Inc. The fact that this law was passed in 1927 and that the Commission is disclaiming jurisdiction indicate that for twenty-one years the law has been in force without the Commission regulating the type of transportation here involved. This non-action for such a period of time suggests a departmental construction which has great weight with the courts in the construction of an uncertain statute.

The tremendous burden which would be placed upon the Railroad Commission in

---

* This act, or portions of it, held unconstitutional in Ex parte, Garland, 142 Tex.Cr.R. 414, 154 S.W.2d 834.

regulating all of the taxicabs which operate in the rural communities of Texas, together with the great expense incident thereto, should not be forced upon the Commission in the absence of a clear legislative mandate, which we are unable to find.

Our holding is limited to the case before us and we do not pass upon the right of appellants, if any, to continue the operation of their taxicab business.

The judgment of the trial court is affirmed.

Affirmed.