

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 10, 1952

Hon. Olin Culberson, Chairman
Railroad Commission of Texas
Austin, Texas

Opinion No. V-1549

Re: Authority of the Rail-
road Commission to pre-
scribe joint or propor-
tional rail-barge or
truck-barge rates for
traffic moving on the
intracoastal canal.

Dear Sir:

You have requested the opinion of this office as to the jurisdiction, if any, of the Railroad Commission to prescribe joint rail-barge or joint truck-barge freight rates applicable to the movement of traffic on the intracoastal canal. The information you furnish reveals that a barge operator on the canal has inquired as to the possibility of the Commission's prescribing such joint rates so that barge operators may meet the competition of truck and rail operation between points also served by barges.

You set out the specific rates that would have to be prescribed by the Commission to accomplish this, as follows:

"1. That the Commission prescribe motor carrier, or railroad rates, from interior points in Texas to points along the intracoastal canal, as proportional rates to be applied in connection with subsequent movement by barge, which rates would be less than rates of the motor carriers, or railroads, for application from the same origin to the same destination on the canal on freight that would remain at that point.

"2. That the Commission prescribe rates, via motor carriers, or railroads, as the case may be, from points on the intracoastal canal, to interior points in Texas, as proportional rates on freight which has originated at some point along the canal, moved by barge to another point on the canal, and to be moved therefrom to an interior point or points by motor carrier, or by rail, which would be less than would apply by motor carrier, or rail, as the case may be, from the same origin to the same destination but which had not had a prior barge movement.

"3. That the Commission prescribe rates, via motor carrier, or via railroad, from points in the interior of Texas to points along the canal, and rates from other points along the canal to interior points, on which there has been an intermediate haul by barge. This would involve two separate motor carrier, or railroad movements, one at origin and the other at destination end, which might be via the same or different carriers.

"4. That the Commission prescribe through rates to be applied from interior points in Texas to interior points in Texas, via motor carrier, or rail, thence via barge, thence via motor carrier or rail; or through rates from points on the canal via barge, thence motor carrier or rail, or vice versa."

We think we can best examine the proposal of the barge operator by quoting directly from his letter accompanying your opinion request, which gives a graphic illustration of the problem:

". . . Assume any commodity originating at Houston for destination Mission, Texas, which is an interior point located only a short distance from the newly opened port of Harlingen. The truck rate from Harlingen to Mission being a short haul is comparatively high. The all rail rate from Houston to Mission is, of course, a through rate as is also the truck rate. The spread between the Houston--Mission rail or truck rate and the truck rate from Harlingen to Mission is very thin so that if a given commodity moved barge from Houston to Harlingen, truck Harlingen to Mission, there would be no spread from which the barge movement could be compensated. The traffic is, therefore, denied movement in this manner. If the Railroad Commission could, however, prescribe a through rate from Houston to Mission (or vice-versa) for application on a movement partly by truck and partly by water and only so applicable, in connection with which the participating carriers could agree on divisions, then such movement could occur from a competitive standpoint and no question of discrimination would be involved because there would be no such thing as a truck line performing its portion of the service between Harlingen and Mission or in the reverse at a rate less than it would perform the same service between Harlingen and Mission or Mission and Harlingen, for only shippers between Houston and Mission or Mission and Houston would be involved."

It appears, therefore, that the barge operation problem is occasioned by an unfavorable competitive position caused by the combination of barge rates with local rail and truck rates to points on the canal, when contrasted with all-rail or all-truck rates

between the same ultimate points of the traffic movement.

We observe initially that the Railroad Commission is a regulatory agency which possesses only such authority as is conferred by law. Texas & N.O. Ry. Co. v. Houston Belt & Terminal Ry. Co., 227 S.W.2d 610 (Tex.Civ.App. 1950); Foster v. Railroad Commission, 215 S.W.2d 267 (Tex.Civ.App. 1948); Railroad Commission v. Red Arrow Freight Lines, 96 S.W.2d 735 (Tex. Civ.App. 1936, error ref.).

As such, the Railroad Commission has no authority conferred by law to regulate barge rates or movement on the intracoastal canal. See Consolidated Chemical Industries v. Railroad Commission, 201 S.W.2d 124 (Tex.Civ.App. 1947, error ref. n.r.e.) and former Attorney General's Opinion, dated August 22, 1932.

Insofar, therefore, as you propose to prescribe a rate, either joint or proportional, to be collected for barge movement per se, there is no statutory authority therefor, and the same would be illegal.

A different question arises as to your proposal to prescribe  proportional rates applicable to rail or truck movement either preceding or following barge movement. As indicated in your opinion request, such proportional rates would necessarily be subnormal rates in order to achieve competitive equality in the overall rate to attract traffic now moving all-rail or all-truck.

A proportional rate has been defined in Atchison, T. & S.F. Ry. Co. v. United States, 279 U.S. 768, 49 S. Ct. 494 (1929), as follows:

"A through rate is ordinarily lower than the combination of local rates. When a through rate is made by combination of rates for intermediate distances, the rate for the later link in the shipment is, when lower than the local, spoken of as a proportional rate."

For a similar definition, also see 9 Am. Jur. 1016, Carriers, Sec. 946.

It is necessary for proportional rates to be reasonable and non-discriminatory in order for them to be legal. Atchison, T. & S.F. Ry. Co. v. United States, supra.

We observe from your request that the subnormal proportional rates which would be applicable to the prior or subsequent rail or truck movement are not requested by the railroads nor by the truckers, as they patently would not be, since the application of these rates wouldattract traffic from its present all-rail or all-truck movement to movement partially by barge. Furthermore, the movement of traffic all-rail or all-truck between the same ultimate destinations, generally the ports, is now moving on water-compelled rates which are lower than normal rates and were requested by the rails or trucks to meet barge competition.

It becomes necessary to inquire whether the imposition of these special subnormal proportional rates on the railroads or the truckers would be discriminatory. We conclude that it would be.

It is required by law that rates promulgated by the Railroad Commission be non-discriminatory. Art. 6474, V.C.S. The rates about which you inquire would in effect grant discriminatory preferences to points located on the intracoastal canal insofar as rail or truck rates to these points are concerned, when contrasted with rail or truck rates for similar distances to points located elsewhere than on the canal. This is specifically set out in your questions.

The Court in Railroad Commission v. Galveston Chamber of Commerce, 105 Tex. 101, 145 S.W. 573 (1912) made the following pertinent observations in discussing the discrimination question:

"It seems to be in the mind of the attorneys for defendants in error that Galveston is entitled by law to some favor because of its location and water transportation. The advantage exists, and that position would not cause adverse discrimination nor favorable indulgence. The benefit of access to the high seas belongs to the people of all the states, and may be, and no doubt has been used by the Commission for the general good. The bayou affords some competition with the railroads between Houston and Galveston, and, if it were sufficient, might force the railroads to seek lower rates to Galveston; but Galveston would have no right to demand lower rates on the railroads." (Emphasis supplied)

In this connection, we emphasize that it does not appear from your request that the railroads and truckers have requested these subnormal rates which they would realize, and which would cause them to lose much of the volume of their through traffic.

We are of the opinion that the imposition of such rates on the rails and truckers for the purpose you propose would be unreasonable and discriminatory as to the rails and truckers, and therefore without authority in law. Railroad Commission v. Houston Chamber of Commerce, 124 Tex. 375, 78 S.W.2d 591 (1935); Railroad Commission v. Galveston Chamber of Commerce, 115 S.W. 94 (Tex.Civ.App. 1908, error ref.).

Applying this conclusion to the ·specific rate proposals about which you inquire, we hold that the Railroad Commission has no authority to prescribe any of the rail or truck rates set out.

## SUMMARY

The Railroad Commission has no authority to prescribe barge rates applicable to the intrastate movement of traffic by barge on the intracoastal canal. Former Attorney General's Opinion, dated August 22, 1932.

The Railroad Commission may not prescribe proportional rail or truck rates applicable to the intrastate movement of traffic by rail or truck and by barge on the intracoastal canal, if such rail or truck rates are lower than the local or other normal rate applicable to movement to the point on the canal at which the rail or truck movement ends or begins. Art. 6474, V.C.S. Railroad Commission v. Houston Chamber of Commerce, 124 Tex. 375, 78 S.W.2d 591 (1935); Railroad Commission v. Galveston Chamber of Commerce, 115 S.W. 94 (Tex.Civ.App. 1908, error ref.).

APPROVED:

E. Jacobson
Executive Assistant

Price Daniel
Attorney General

DJC:mds

Yours very truly,

PRICE DANIEL
Attorney General

By Dean J. Capp
Assistant