## JUAN VILLALOBOS V. NIGUEL HOLGUIN ET AL.

No. A-1426. Decided February 11, 1948.
Rehearing overruled March 17, 1948.
(208 S. W., 2d Series, 871.)

*Burges, Scott, Rasberry & Hulse* and *J. F. Hulse,* all of El Paso, for petitioner.

*J. E. Quaid* and *Leo Jaffe,* both of El Paso, and *M. Scarborough,* of San Antonio, for respondents.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This is an injunction suit filed by petitioner, Juan Villalobos, individually and as administrator of the estate of a deceased person, against respondents, Miguel Holguin et al. A trial court judgment for petitioner was reversed by the court of civil appeals and the cause was remanded. 212 S. W. (2d) 498.

Under a certificate of convenience and necessity from the Railroad Commission of Texas petitioner was operating as a common carrier, by motor vehicle, of passengers for hire between El Paso, Ysleta, Socorro, San Elizario and Clint, in El Paso County. He alleged that the respondents, operators of a jitney service, were transporting passengers for hire to and from the same towns and villages, but without any certificate from the Railroad Commission. The injunction was sought under authority of Art. 1690a, P. C., 1925, to prevent respondents from operating that business in violation of Art. 911a, R. S., 1925, as amended, Art. 911a, V. A. C. S.

Without any sort of complaint from either side, only one issue was submitted to the jury: "Do you find from a preponderance of the evidence that the defendants operate their motor propelled vehicle wholly within the limits of the City of El Paso, Texas, and the suburbs thereof? In this connection you are charged that the term, as used in this issue, 'suburbs' is meant an outlying part of the City; or surrounding territory adjacent to the City." The answer was "No."

The judgment enjoined respondents "from operating any motor propelled passenger vehicle for the regular transportation of persons as passengers for compensation or hire over any public highways of this state between the City Limits of the City of El Paso, Texas, and the Towns of Ysleta, Socorro, San Elizario and Clint and all intermediate points between said cities and towns" until such time as they may secure a certificate of convenience and necessity from the Railroad Commission.

Art. 911a, supra, provides for the regulation of motor bus transportation. Sec. 1(c) defines a motor bus company as "every corporation or persons as herein defined, * * * operating * * * any motor propelled passenger vehicle not usually operated on or over rails, and engaged in the business of transporting persons for compensation or hire over the public highways within the State of Texas, whether operating over fixed routes or fixed schedules or otherwise." Then it provides that *the term "shall not include corporations or persons, * * * insofar as they * * * operate motor propelled passenger vehicles operated wholly within the limits of any incorporated town or city, and the suburbs thereof,* whether separately incorporated or not." (Italics ours.) Sec. 5 provides that no motor bus company "shall hereafter regularly operate for the transportation of persons as passengers for compensation or hire over the public highways of this state" without first having obtained a certificate from the Railroad Commission that public convenience and necessity require that it so operate.

Art. 1690a, sec. (c), Vernon's Annotated Penal Code, provides that one operating without a certificate of convenience and necessity may be enjoined on the application of anyone who does hold such a certificate over the route affected.

On original consideration the court of civil appeals affirmed the judgment of the trial court. On rehearing, in a divided opinion, that court reversed the trial court judgment because it enjoined respondents from operating anywhere but in the city limits of El Paso, without any finding that there was no suburban territory outside those limits. This holding was based on the theory that respondents, under Art. 911a, sec. 1(c), supra, can lawfully operate not only within the city limits but also in the suburbs of the city without any certificate of convenience and necessity.

Petitioner presents eight points of error, seven of which

variously attack that court's construction of Sec. 1(c), *supra*. The basic contention is that since respondents were not operating wholly within the City of El Paso and its suburbs, they could not operate anywhere without a certificate from the Railroad Commission. We are not in accord with that proposition.

Art. 911a relates to the power of the state to regulate motor bus companies in the transportation of passengers for hire. It confers that power upon the Railroad Commission and prescribes how it shall be exercised. Obviously, before the Commission could know the bounds of its powers, it was necessary for the Legislature, among other things, to define the term "motor bus company." That is accomplished by means of Sec. 1(c), which defines the term and then prescribes that *it shall not include persons insofar as they operate* motor propelled *passenger vehicles operated wholly within the limits of an incorporated city and its suburbs*. It is reasonable to assume that exception was made in deference to the fact that cities and towns had long been empowered to license persons transporting passengers for hire within their boundaries. See Art. 1015, sec. 36, and Art. 1175, sec. 21, R. S., 1925. In fact, Art. 911a expressly recognizes the exception as to home rule cities when it provides in section 2 "that nothing in this Act or any provision thereof shall be construed or held to in any manner affect, limit, or deprive cities and towns from exercising any of the powers granted them by Chapter 147, pages 307 to 318 inclusive, of the General Laws of the State of Texas, passed by the Thirty-third Legislature, or any amendments thereto."

■ In City of Wichita Falls v. Bowen, 143 Texas, 45, 182 S. W. (2d) 695, 154 A. L. R. 1434, it was held that Bowen's right to operate on a state highway under a certificate of convenience and necessity ceased after the city annexed the highways, because Sec. 1(c), *supra*, "operates to deny the Railroad Commission the power to regulate local business done by Motor Bus Companies" within the corporate limits of an incorporated city or town. That case presented only the question of the city's powers as to bus company operations within the corporate limits, so we did not pass on the question in relation to the suburbs of an incorporated city; but we see no reason for any distinction as to suburbs, when Art. 911a plainly says that it is not giving the commission authority to require certificates of persons operating motor-propelled passenger vehicles wholly within the limits of any incorporated city and the suburbs thereof. It was clearly the intent of the Legislature that each incorporated city, in granting licenses to those desiring to do

a taxi business within the city, be left to regulate that business not only within its corporate limits but within its suburbs as well; and we so hold.

■ There has been much controversy in this case as to the meaning of "suburbs" as used in Sec. 1(c). Respondents argue that since they have a taxi license from the City of El Paso, they can lawfully operate from El Paso to Isleta, Socorro, San Elizario and Clint and through all the territory between those villages because all those areas are suburbs of El Paso. We overrule that contention.

One authority holds that since the statute does not define suburbs, the courts are left to give the word its "usual, familiar, and generally understood meaning, as used in everyday life." Then it points out that the use of the word in our statutes "is not new, for we have it used and well understood in urban homestead and other laws," and defines the terms as an outlying part of a city or town; a smaller place adjacent to a city. Woolf v. Del Rio Motor Transp. Co. et al (Civ. App.), 27 S. W. (2d) 874. A suburb of a city is an outlying part of it, which may be used for business or for residential purposes or for both. Rowland v. City of Newcastle, 157 Ind. 591, 62 N. E., 474. It is an outlying district which is adjacent to the city and convenient for use as a place of residence for those who work in the city. Piedmont Cotton Mills v. Georgia Ry. Co., 131 Ga., 129, 62 S. E., 52; 60 C. J., p. 982. The word "suburbs" signifies the outskirts of a city to live in or have branch stores in. Webster's New International Dictionary, 2nd Ed. The testimony shows that the areas between Ysleta, Socorro, San Elizario and Clint consist of farm lands and that there are a number of small farms and a few large ones in the area between Ysleta and El Paso. Under those circumstances we have no difficulty in reaching the conclusion that Ysleta, Socorro, San Elizario and Clint and the territories between those villages are not suburbs of El Paso. We conclude also that as respondents operate out of El Paso toward Ysleta, the suburbs of El Paso end where the first farms begin. When they reach farms they find a rural population, "which is understood to signify a people scattered over the country, and engaged in agricultural pursuits, or some similar avocations, requiring a considerable area of territory for its support. A section of country so inhabited cannot be called a town, nor treated as part of a town, without doing violence to the meaning ordinarily attached to that word." (Italics ours.) State v. Eidson et al, 76 Texas 302, 13 S. W., 263, 7 L. R. A. 733.

But petitioner urges that Sec. 1(c) is so indefinite that it is unconstitutional. His contention is that what constitutes the suburbs of El Paso outside the corporate limits is incapable of definite ascertainment by respondents so as to permit them to operate therein without a certificate of convenience and necessity from the Railroad Commission. We do not believe that this proposition is tenable. We recognize that the rule is, as stated in 43 C. J. S., p. 944, that an injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing. Nevertheless, we believe that when respondents are enjoined from operating their motor-passenger vehicles outside the corporate limits and suburbs of the City of El Paso, they will understand that when they pass out of those adjacent sections of the city which are used as places of residence by workers in the city into those sections which are used for farming, ranching or other essentially rural pursuits, they will be violating the injunction. This view gives effect to the equally important rule that the decree must not be so broad as to enjoin a defendant from activities which are lawful and a proper exercise of his right. 43 C. J. S., p. 941. Under Sec. 1(c), of Art. 911a, supra, respondents have the legal right to operate in the suburbs of El Paso, so an injunction which prohibits them from operating outside the city limits deprives them of the exercise of that right. We have no quarrel with the holding by the Court of Criminal Appeals in Ex Parte Slaugher, 92 Texas Cr. Rep. 212; 243 S. W., 478, and Ex Parte Carrigan, 92 Texas Crim. Rep., 309, 244 S. W., 604, cited by petitioner. In those cases the statute making it an offense for one to drive a motor vehicle on a public highway "where the territory continguous thereto is closely built up" was held void because it would be impossible for a passing motorist to know whether the territory through which he is traveling is so built up. Here, however, respondents are doing a day-to-day business in the area involved and have full opportunity to know whether it is within the suburbs of El Paso. Since the language of Sec. 1(c) provides support for a judgment which respondents can reasonably understand and obey, we hold that the statute is not unconstitutional on the ground urged.

It follows that the court of civil appeals correctly reversed the cause. However, since the trial court enjoined respondents from operating between the city limits of El Paso and the towns of Ysleta, Socorro, San Elizario and Clint and all intermediate

points between those towns, the court of civil appeals concluded that the cause would have to be remanded for a finding that none of the territory covered by the injunction is suburban to the City of El Paso. While we agree that the injunction, in requiring respondents to confine their operations to the city limits of El Paso, is too restrictive, we do not agree that any finding of fact is necessary. The trial court can render a proper judgment without it. Therefore, a general remand was not the proper order.

We affirm the judgment of the court of civil appeals in reversing the judgment of the trial court; but its judgment remanding the cause for retrial is reversed and the cause is remanded to the trial court with instructions to reform its judgment so as to enjoin respondents from operating (1) in the towns of Ysleta, Socorro, San Elizario and Clint, Texas, and all intermediate points between those towns, and (2) in any territory between Ysleta and El Paso which is not a suburb of the City of El Paso, under our holdings.

Judgments of court of civil appeals affirmed in part and reversed in part; cause remanded to trial court with instructions.

Opinion delivered February 11, 1948.

Rehearing overruled March 17, 1948.