**REDDITT v. NUECES TRANSP. CO.**

No. 9812.

Court of Civil Appeals of Texas. Austin.

Oct. 26, 1949.

Rehearing Denied Nov. 16, 1949.

Price Daniel, Attorney General of Texas, and W. V. Geppert and C. E. Crenshaw, Assistant Attorneys General, for appellants.

Kemp, Lewright, Dyer & Sorrell, Cecil D. Redford, of Corpus Christi, for appellee.

ARCHER, Chief Justice.

This is a protest tax suit brought under the provisions of art. 7057b, Vernon's Ann. Civ.St. Appellants, State Highway Commission and Joe L. Stevens, Tax Assessor-Collector of Nueces County, Texas, acting as "designated agent" of the State Highway Department, required appellee, Nueces Transportation Company, to pay "motor bus" license fees on its buses operated between the City of Corpus Christi, Texas, and the United States Naval Base. Appellee paid the fees under protest and claims that said buses are "street or suburban buses" requiring a lower license fee.

Trial was had to a jury, to whom one special issue was submitted, and based upon an affirmative answer thereto, the trial court entered judgment in behalf of appellee.

All parties filed motions for instructed verdict, which were overruled by the court.

The appellants assign as error six points.

But, as recited, "the real issue to be determined here is: Are the buses of Nueces Transportation Company 'motor buses' or 'street or suburban buses' " ?

Article 6675a—1(n), Vernon's Ann.Civ. St., defines "motor busses" as: " 'Motor Bus' shall include every vehicle, except those operated by muscular power or exclusively on stationary rails or tracks, which is used in transporting persons upon the public highways of this State for compensation (or hire) whether operated over fixed routes or otherwise; except such of said vehicles as are operated exclusively within the limits of incorporated cities and/or towns or suburban additions to such cities and/or towns."

We believe that as a matter of law the buses of Nueces Transportation Company are motor buses, and that the suburbs of Corpus Christi end where the first farms begin.

In Villalobos v. Holguin, 146 Tex. 474, 208 S.W.2d 871, 874, Justice Brewster discusses the meaning of "suburbs" as follows: "One authority holds that since the statute does not define suburbs, the courts are left to give the word its 'usual, familiar, and generally understood meaning, as used in everyday life.' Then it points out that the use of the word in our statutes 'is not new, for we have it used and well defined and understood in urban homesteads and other laws', and defines the term as an outlying part of a city or town; a smaller place adjacent to a city. Woolf v. Del Rio Motor Transp. Co. et al., Tex.Civ. App., 27 S.W.2d 874, 875, 876. A suburb of a city is an outlying part of it, which may be used for business or for residential purposes or for both. Rowland v. City of Greencastle, 157 Ind. 591, 62 N.E. 474. It is an outlying district which is adjacent to the city and convenient for use as a place of residence for those who work in the city. Piedmont Cotton Mills v. Georgia Ry. & Electric Co., 131 Ga. 129, 62 S.E. 52; 60 C.J., p. 982. The word 'suburbs' signifies the outskirts of a city to live in or have branch stores in. Webster's New International Dictionary, 2d Ed." · ·

Justice Brewster further says: "The testimony shows that the areas between Ysleta, Socorro, San Elizario and Clint consist of farm lands and that there are a number of small farms and a few large ones in the area between Ysleta and El Paso. Under those circumstances we have no difficulty in reaching the conclusion that Ysleta, Socorro, San Elizario and Clint and the territories between those villages are not suburbs of El Paso. We conclude also that as respondents operate out of El Paso toward Ysleta, the suburbs of El Paso end where the first farms begin. When they reach farms they find a rural population, 'which is understood to signify a people scattered over the country, and engaged in agricultural pursuits, or some similar avocations, requiring a considerable area of territory for its support. A section of country so inhabited cannot be called a town, *nor treated as part of a town*, without doing violence to the meaning ordinarily attached to that word.' (Italics ours.) State v. Eidson et al., 76 Tex. 302, 13 S.W. 263, 264, 7 L.R.A. 733.' "

G. R. Swantner (called by plaintiff) testified as to the beginning of farms, in some instances on both sides of the highway, and of the presence of areas of brush land. Witness Anderson testified substantially to the same facts as Swantner, and that the farms were not densely but sparsely settled with homes.

The moving picture evidence depicts the entire route in controversy, except in the city limits and within the Naval Air Base. This picture shows the existence of farms and farm lands along the route. Some of them appear to be large cotton farms, and large areas of either farm lands, or brush country, or open country.

Nueces Transportation Company operates these same buses under a certificate of public convenience and necessity granted by the Railroad Commission. Each year, 1946, 1947 and 1948, the license fee due for motor buses to the Railroad Commission

292

was paid by appellee. The fare from Corpus Christi to the Naval Base on these buses is 20¢.

Under the law and the facts in this case, we believe the appellee's buses are "Motor Buses" as matter of law, and that the findings of the jury and the judgment based thereon find no support in the evidence.

We do not, in view of our disposition of this case, find it necessary to pass on the fifth and sixth points assigned by appellants, as to the sufficiency of the charge, the issue submitted, and the definitions therein.

The judgment of the trial court is reversed and judgment is here rendered in favor of appellants, and that the appellee take nothing.

Reversed and rendered.