**CITY OF CORPUS CHRISTI, Appellant,**

v.

**CONTINENTAL BUS SYSTEMS, INC.**
**et al., Appellees.**

**No. 11700.**

Court of Civil Appeals of Texas.

Austin.

July 23, 1969.

Rehearing Denied Oct. 1, 1969.

I. M. Singer, City Atty., Corpus Christi, McGinnis, Lochridge, Kilgore, Byfield, Hunter & Wilson, B. D. St. Clair, Austin, for appellant.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Hawthorne Phillips, Executive Asst. Atty. Gen., W. V. Geppert, Staff Legal Asst. Atty. Gen., James H. Cowden, Thomas F. Sedberry, Asst. Attys. Gen., James, Robinson, Felts & Starnes, Clark, Thomas, Harris, Denius & Winters, Austin, Phinney, Hallman, Pulley & Livingstone, Wm. E. Livingstone, III, Dallas, for appellees.

HUGHES, Justice.

This suit was brought by the appellees, Continental Bus Systems, Inc., Union Bus Lines, Inc., and Greyhound Lines, Inc., Central Division, against the City of Corpus Christi, Texas, appellant, to permanently enjoin the City from conducting bus service outside *its city limits and suburbs* and for a money judgment. The Railroad Commission and other bus companies intervened aligning themselves with appellees. Appellee bus companies moved for partial summary judgment on the issue of the injunction.[1] The City, contesting Ap-

1. We quote from the Motion for Partial Summary Judgment:

"COME NOW Continental Bus System, Inc., Union Bus Lines, Inc. and Greyhound Lines, Inc., Central Division, Plaintiffs in the above referenced cause and file this their Motion for Partial Summary Judgment on the issue of liability and relief by way of permanent injunction, and for same would respectfully show this Honorable Court:

1.
Plaintiffs by their action in this cause seek the issuance of a permanent injunction against Defendant enjoining its for hire motor-bus service over the highways of Texas outside the city limits and suburbs of Corpus Christi, Texas. Defendant, through its pleadings, admissions, testimony and argument to this Court, admits the City is conducting for hire motor-bus operations outside its city limits and suburbs.

**14**

pellees' Motion for Summary Judgment, also moved for summary judgment. The trial court severed appellees' action for injunction from the action for damages and entered judgment permanently enjoining the City[2] from engaging in for-hire motor bus operations intercity intrastate transporting passengers over the highways of Texas outside the city limits of Corpus Christi and its suburbs.[3] The City's Motion for Summary Judgment was overruled.

In the early part of 1966, the City, a home-rule city, was forced into the bus business when Nueces Transportation Company, the bus company which had served the citizens of Corpus Christi for many years, was compelled for economic reasons to discontinue service. In addition to providing bus service inside the city limits, Nueces Transportation Company also served the City under two Railroad Commission certificates, one (No. 828) authorizing service to Rodd Field and Padre Island and the other (No. 2347–B) authorizing a charter service from the City to points outside the City.

When the City learned that Nueces Transportation Company was going to discontinue its bus operations, it attempted to interest other bus companies in taking over those operations. Those efforts were not successful, and in order to continue this essential public service, the City was compelled to take over. Pending final agreements and financial arrangements for the purchase of the system the City initially made a lease agreement by which it leased the Nueces Transportation Company's facilities and equipment, including the two bus certificates, so that bus service could continue while more definitive arrangements were made.

The City applied to the Railroad Commission for approval to lease the two bus certificates and after notice and at an uncontested hearing this approval was granted by the Commission in May 1966. Thereafter, the City commenced to operate the bus certificates under Commission jurisdiction as a part of the transportation service for its citizens.

Arrangements were then made to finance the purchase of the bus system. The City entered into an agreement to purchase the system, conducted a bond election and issued $500,000 in bonds to finance the purchase and obtained a grant from the federal government for this purpose. The City then applied to the Railroad Commission for its approval of the purchase of the two bus certificates. At that point, appellee bus companies protested the application and filed motions to dismiss and exceptions to such application alleging that the City is not subject to the Motor Bus Act and not subject to the jurisdiction and regulatory powers of the Commission.

By order dated May 5, 1967, the Commission reversed its previous decision in

---

Defendant filed a plea of privilege (Exhibit A 18) to be sued in the county of its domicile. To controvert the plea of privilege, Plaintiffs relied on the provisions of Article 911a, T.R.C.S. (Exhibit A 22) and the alleged jurisdiction of the Railroad Commission to enjoin any violation of the Motor Bus Act or the rules, regulations, orders and decrees of the Commission. Art. 1690a, Texas Penal Code. (Exhibit A–24; 84–87). A hearing was held before this Court on the plea of privilege and judgment was entered on the pleadings, evidence, exhibits and argument of counsel, overruling the plea. (Exhibit A–106).

Plaintiffs believe the record before this Court on the plea of privilege hearing, including the transcript, all exhibits and the statement of facts, shows that, except as to the amount of monetary damages, there is no genuine issue as to any material fact and that these Plaintiffs, the moving parties, are entitled to a judgment and issuance of a permanent injunction against said Defendant as a matter of law."

2. The propriety of this procedure is not questioned.

3. Art. 1118w, V.T.C.S. gives home rule cities express authority to own and operate transportation systems "within such city, its suburbs and adjacent areas."

approving the lease and found that the City of Corpus Christi is not a "motor bus company" as that term is defined in the Motor Bus Act and that the City is not subject to the Commission regulation. The order dismissed the City's application, cancelled the previous lease approval and cancelled the Commission's approval as to certain rate matters relating to the City's bus operations. Neither the City nor appellees appealed from that order.[4]

Following the issuance of that order by the Commission, the City has continued to provide bus service for its citizens including services to Padre Island, and school bus service for its school children and charter bus service for civic groups, schools and churches from the City of Corpus Christi to points outside the City. It has provided this service and spent substantial sums for bus equipment in order to do so in reliance upon the Commission's determination that the City's bus operations are not subject to Commission jurisdiction and regulation. The service provided has not been regulated by the Commission nor has the Commission asserted jurisdiction over the City's bus operations.

The City has four points of error but our disposition of this case requires us to consider only the contention that the City is not subject to the jurisdiction of or regulation by the Railroad Commission and hence is not subject to be enjoined under the provisions of Art. 1690a, b, V.T.P.C.

We agree with the Commission, as shown by its order copied above, that the Commission is without jurisdiction of or authority to regulate the City of Corpus Christi insofar as the enjoined operations are concerned.

We quote from appellees' brief their basic contentions:

"One of Appellant's basic fallacies is its continued efforts to segregate consideration of its operations under the Motor Bus Act and the 'Home Rule' amendment to the Constitution, Art. XI, Sec. 5, Texas Constitution. Appellees believe the two aspects must necessarily be considered together and are not capable of independent evaluation.

The Motor Bus Act, Art. 911a, V.A.C.S., prohibits the operations of Appellant, enjoined by the trial court, in two respects. The statute specifically defines the areas of mutually exclusive jurisdiction as between cities and the Railroad Commission. Violations on either side of the coin may be redressed through remedies incorporated in the Act and established by court decisions. In addition, were the Motor Bus Act completely silent in all respects concerning motor bus operations of cities, 'Home Rule' or otherwise, the jurisprudence of this state establishes the Act as a limitation on the operations of Appellant. When Appellant or any other 'Home Rule' city seeks to conduct motor bus operations

---

4. The order of the Commission and the *recommendations of the Hearing Examiner* incorporated in the order by reference follows:
 "IT IS THEREFORE:
 ORDERED BY THE RAILROAD COMMISSION OF TEXAS, That the application for approval of the sale and transfer from Nueces Transportation Company to the City of Corpus Christi be dismissed for lack of jurisdiction; that the lease approval between said parties be cancelled and that all rate orders pertaining to the City of Corpus Christi be voided."
 \*    \*    \*    \*    \*

"Argument having been presented to the Examiner and authorities in support thereof: the Examiner is of the opinion and so finds that the Motion to Dismiss states good and sufficient grounds for dismissal; that the portion of the certificates authorizing transportation within the corporate limits of Corpus Christi is not governed by the Railroad Commission and that the portion of the certificates authorizing transportation beyond the *corporate limits of* Corpus Christi is not subject to transfer to the City as the City does not come within the definition of a Motor Bus Company and therefore not regulated by the Railroad Commission."

which are inconsistent with a general law of this state (Art. 911a, V.A.C.S.) their operations are illegal to the extent they conflict with the provisions and intent of the Legislature embodied in the statute."

Before considering these contentions, we must bear in mind two important principles: (1) The Railroad Commission has only such jurisdiction and authority as may be conferred upon it by the Legislature. Railroad Commission of Texas v. Red Arrow Freight Lines, 96 S.W. 2d 735, Tex.Civ.App., Austin, writ ref. (1936).[5] (2) Home Rule Cities have full power of self-government, that is, full authority to do anything the Legislature could theretofore have authorized them to do, the result being that Home Rule Cities look to the acts of the Legislature not for grants of power to such cities but only for limitations on their powers. Forwood v. City of Taylor, 147 Tex. 161, 214 S.W.2d 282 (1948); State of Texas ex rel. Rose v. City of La Porte, 386 S.W.2d 782, Tex. Sup. (1965), Art. 11, Sec. 5, Texas Constitution.

The Motor Bus Act, Art. 911a, V.T.C.S., referred to and relied upon by appellees as prohibiting the operations of the City which were enjoined defines in Sec. 1(a) the term "corporation" as meaning "a corporation, company, association, or joint stock association." This definition does not include a municipal corporation. The decisions on this point are clear, authoritative and recent. In The State of Texas v. Central Power and Light Company, 139 Tex. 51, 161 S.W.2d 766 (1942), it is stated, "While there are exceptions, depending on the peculiar wording of the statute under consideration, as a general rule the word 'corporation' is construed to apply only to private corporations and does not include municipal corporations, unless the statute expressly so provides." This case on this

point has been followed without question and was last cited and followed by our Supreme Court in City of Houston v. Renault, Inc., 431 S.W.2d 322 (1968).

Sec. 1(c) of Art. 911a defines "Motor Bus Company" as meaning " * * * every corporation * * * as herein defined * * * "

It follows, in our opinion, that the Motor Bus Act does not purport to regulate municipal corporations.

The only mention in the Motor Bus Act of the authority of cities and towns in relation to the Act is that they are unaffected by it. This is found in Sec. 2 which provides, in part: " * * * provided, however, that nothing in this Act or any provision thereof shall be construed or held to in any manner affect, limit, or deprive cities and towns from exercising any of the powers granted them by Chapter 147, Pages 307 to 318 inclusive, of the General Laws of the State of Texas, passed by the 33rd Legislature, or any amendments thereto."

The laws referred to are now codified as Arts. 1175–6, V.T.C.S.

In our judgment, the quoted language from Sec. 2 of Art. 911a is purely exclusionary as to cities and towns and does not constitute any limitation upon their powers. However, if reference should be made to Arts. 1175–6 for restrictions or limitations on the authority of cities and towns, we fail to find any applicable restrictions.

Sec. 16 of Art. 1175 gives to Home Rule Cities "exclusive" dominion, control and jurisdiction over and under the public streets, avenues, alleys and highways of the City.

Sec. 13 of Art. 1175 provides that such cities have the power, "To buy, own, construct *within or without the city limits* and to maintain and operate a system or sys-

---

5. See Foster v. Railroad Commission, 215 S.W.2d 267, Tex.Civ.App., Austin, no writ (1948) where the Railroad Commission successfully disclaimed authority to regulate rural taxicabs.

tems, of gas, or electric lighting plant, telephone, street railways, sewerage plants, fertilizing plants, abattoir, municipal railway terminals, docks, wharfs, ferries, ferry landings, loading and unloading devices and shipping facilities, *or any other public service* or public utility, and to demand and receive compensation for service furnished for private purpose or otherwise." (Italics ours.)

Art. 1176 provides:

"Further powers

The enumeration of powers hereinabove made shall never be construed to preclude, by implication or otherwise, *any such city from exercising the powers incident to the enjoyment of local self-government,* provided that such powers shall not be inhibited by the State Constitution." (Italics ours.)

The City Charter of the City of Corpus Christi contains these provisions:

"The City may take, hold and use property, within or without the corporate limits, needed for a public purpose. * * *

The enumeration of particular powers in this Charter shall not be deemed exclusive, but in addition to the powers enumerated the City shall have power to do all things necessary to efficient management and control of municipal property and to promote the general welfare, not forbidden by this Charter, the general laws or the Constitution of the State of Texas. In addition to the powers herein otherwise granted, the City shall have all powers enumerated in Article 1175, Revised Statutes of Texas, 1925, as heretofore amended, as though such statute were set forth herein."

■ The rule governing this Court in this case is stated in City of Sweetwater v. Geron, 380 S.W.2d 550, Tex.Sup. (1964) as follows:

"Although the broad powers granted to home rule cities by the Constitution, Article XI, Section 5, Vernon's Ann.St., may be limited by acts of the Legislature, it seems that should the Legislature decide to exercise that authority, its intention to do so should appear with unmistakable clarity."

■ Appellees lay great stress on Yellow Cab Transit Co. v. Tuck, 115 S.W.2d 455, Tex.Civ.App., Dallas, writ ref. (1938); Villalobos v. Holguin, 146 Tex. 474, 208 S.W.2d 871 (1948) and City of Wichita Falls, Tex. v. Bowen, 143 Tex. 45, 182 S.W.2d 695, 154 A.L.R. 1434 (1944). These cases simply hold that Home Rule Cities have exclusive jurisdiction over streets and highways within their cities as is specifically provided in Art. 1175, supra. That the cities have this exclusive jurisdiction does not militate against their authority to share with others the use of streets and highways outside their limits.

■ We are unable to find that the Legislature with "unmistakable clarity" has denied to Home Rule Cities the right to do what the trial court enjoined the City of Corpus Christi from doing.

The briefs in this case contain much that pertains to the public policy which should prevail. This is not a proper forum for such discussion, the proper forum being the Texas Legislature.

■ Under our view of the law as expressed herein none of appellees has the right to sue for injunctive relief under the provisions of Art. 1690a, b, V.T.P.C. for the reason that no order, rule or regulation of the Railroad Commission is shown to have been violated by the City of Corpus Christi.

It is our opinion that the trial court erred in granting Appellees' Motion for Partial Summary Judgment and in issuing a permanent injunction against the City of Corpus Christi under the authority of Art. 1690a, b, V.T.P.C. It is, therefore, ordered that such partial summary judgment be vacated, the injunction dissolved, and

that this cause be reversed and remanded for further proceedings not inconsistent with this opinion.

PHILLIPS, C. J., dissenting.

PHILLIPS, Chief Justice. (dissenting.)

I respectfully dissent.

I would hold that the Railroad Commission has jurisdiction in this case and I would also hold that the City exceeded its statutory powers in venturing into the motor bus business beyond its city limits and suburbs.

While the wording of the Commission's order is somewhat ambiguous, a reasonable construction is that the Commission could not approve the proposed sale and transfer of the certificates because Appellant as a municipal corporation was not capable of becoming a purchaser thereof and was precluded from being a motor bus operator for hire. That the Commission dismissed the application for sale and transfer of the certificates recognizing the inherent authority of Appellant to conduct motor bus operations within its corporate limits and suburbs precluding any operations by Appellant intercity, intrastate or over the highways of Texas outside its corporate limits and suburbs. Thus I would construe the order and hold that it correctly interprets the law.

I would also hold that the trial court was correct in enjoining Appellant's extra legal operation. District Courts have jurisdiction to enjoin an act of the legislature or an order of a Railroad Commission. Woolf v. Del Rio Motor Transport Co., 27 S.W.2d 874 (Tex.Civ.App. San Antonio 1930, no writ).

When Appellant or any other "Home-Rule" City seeks to conduct motor bus operations which are inconsistent with a general law of this State (Art. 911a, V.A. C.S.), their operations are illegal to the extent they conflict with the provisions and intent of the Legislature embodied in the statute.

This mutually exclusive jurisdiction is well stated in Yellow Cab Transit Co. v. Tuck, 115 S.W.2d 455 (Tex.Civ.App., Dallas 1938, writ ref.). Here the Court said:

"The Legislature has uniformly recognized, guarded, and preserved the plenary powers of municipal corporations, operating under the Home Rule Amendment and the Enabling Act of the Legislature, over the streets, alleys, and public places located within the corporate limits. * * To the same extent were the rights of such corporations guarded in the enactment of chapter 277 of the Regular Session of the 42d Legislature, amending c. 314, 41st Leg., § 2, providing for the further regulation of and the issuance of permits and certificates to motor carriers for hire over the highways of this state, in providing that 'nothing in this Act or any provision thereof shall be construed or held to in any manner affect, limit or deprive cities and towns from exercising any of the powers granted them by chapter 147, Pages 307 to 318, inclusive (now article 1165 et seq., R.S.) of the General Laws of the State of Texas passed by the 33rd Legislature, or any amendments thereto.' Vernon's Ann.Civ.St. art. 911b, § 2."

Also see Villalobos v. Holguin, 146 Tex. 474, 208 S.W.2d 871 (1948); City of Wichita Falls, Tex. v. Bowen, 143 Tex. 45, 182 S.W.2d 695, 154 A.L.R. 1434 (1944).

The Home-Rule Amendment to the Constitution, cited above, was intended to bestow upon such cities "full power of local government." Thus the *City of Bryan Case* and the *City of San Antonio* relied upon by Appellant authorizing the cities to establish water and power utilities fall under the protection of the amendment and the statutes, cited above, relating to local self-government. Water and power are municipal functions. Unrestrictive, for hire motor bus operations of Appellant outside its corporate limits and suburbs are not of local

governmental concern and Appellant has no power or authority to conduct them under the Home-Rule shield.

"The powers of a municipal corporation comprise those [1] expressly granted * * * [2] those necessarily and fairly implied from or incident to, the powers expressly granted, and [3] those essential to the accomplishment of its declared objects and purposes, and any fair, reasonable, substantial doubt of the existence of a disputed power is said to be resolved by the court against the corporation." 9 Tex.L.R. 456 and authorities cited.

I would also overrule Appellant's point of error Number Two which is the error of the trial court in enjoining the City from transporting its school children over the highways of Texas because the school bus service provided by the City is not in violation of the Motor Bus Act. That conversely, the court erred in not granting judgment for the City with respect to such service.

Appellant contends that approximately 75% of all the City's out-of-town charter bus service is furnished for school children. That the school system does not own buses for this purpose and, consequently, contracts with the City for this charter service. That when buses are chartered by the school system for such purposes, the children who are all eighteen years of age or under travel together as a group and are under the supervision and direction of proper school authorities.

Since 1941 the Railroad Commission has had in effect rules and regulations dealing with charter bus service. Those rules are now a part of Motor Transportation Regulations of the Commission appearing as Section 13.33, "Charter Operation." Here provision is made by which motor bus companies holding and operating under certificates may obtain authority to transport charter or special parties by the same procedure which is applicable to the obtaining of a certificate under the Commission's rules. The regulation defines a charter party but states that the term shall not include children eighteen years of age or younger who, in the course of secondary or elementary school activities, under the direction of public school authorities, acquire exclusive use of a passenger carrying vehicle and travel together as a group.

The trial court enjoined the City of Corpus Christi from engaging in for-hire motor bus service beyond its city limits and suburbs. This is the only question before this Court. Consequently, we are not called upon to pass on any arrangements that the City may enter into with respect to transporting its school children under color of law. This same answer applies to the Appellant's contention that such transportation of school children is valid under Tex.Rev. Civ.Stat.Ann. art. 6701d, Section 105(a) and Article 2922–15, Section 2A.

I would also overrule Appellant's third point which is the error of the trial court in rendering summary judgment enjoining Appellant from continuing to render a valuable bus transportation service which it has rendered since May 1966, since Appellees are barred by laches and estoppel from maintaining this suit to prevent such service. That conversely, the trial court erred in refusing to grant Appellant's motion for summary judgment.

Laches is not available as a defense here as a statutory legal right is sought to be enforced. Riggs v. Riggs, 322 S.W.2d 571 (Tex.Civ.App., Dallas 1959, no writ).

This Court has held that where the Railroad Commission as a subdivision of the State is enforcing a purely legal right the defense of laches is not available. Railroad Commission of Texas v. Jackson, 315 S.W.2d 193 (Tex.Civ.App., Austin, 1958, err. ref. n. r. e.). Laches cannot be used to foster continuing violations of the civil and criminal statutes of this State.

Appellant's point Number Four is that, in the alternative, if Appellant is subject to the Texas Motor Bus Act, then Appellant is entitled to judgment as a matter of law holding that the Commission order dated

May 5, 1967 is void and of no effect and requiring the Railroad Commission to take jurisdiction of Appellant. That the trial court erred in its refusal to grant this alternative relief.

I would overrule this point due to the construction I have placed upon the order.

I would affirm the judgment of the Trial Court.