

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

December 29, 1971

Mr. James H. Harwell
Executive Director
Texas Industrial Commission
814 Sam Houston Building
Austin, Texas  78711

Opinion No. M-1023

Re:  Authority of a home-rule
city to form a non-profit
corporation for the purpose
of acquiring and improving
land for industrial develop-
ment, and related question.

Dear Mr. Harwell:

Your recent letter to this office requesting our opinion concerning the referenced matter states as follows:

"The City of Waco has proposed to form a non-profit no-share corporation to be known as the Waco Industrial Parks Corporation for the purpose of acquiring and improving land for industrial development.  The Waco Industrial Parks Corporation will also issue bonds for the purpose of financing the acquisition and improvement of industrial land.  These bonds will be secured solely by the land purchased by the Corporation.  Before forming the non-profit corporation, the City of Waco has requested a ruling from the Commissioner of Internal Revenue regarding whether or not the proposed bonds to be issued by Waco Industrial Parks Corporation will be tax-exempt.  The City of Waco has sent its representatives to Washington and met with the I.R.S. regarding this application.

"There has been only one question raised with regard to the application and that is whether or not the City of Waco has the authority to form a non-profit corporation such as Waco Industrial Parks Corporation for the purpose of acquiring and improving land for industrial development together with the

issuing of bonds secured by land to accomplish this purpose. We request a ruling from the Attorney General as to the following questions:

"1.  Does a home-rule city such as the city of Waco have the authority to form such a non-profit corporation for the purpose of acquiring and improving land for industrial development.

"2.  Can the Industrial Parks Corporation finance the acquisition and improvement of land for industrial sites by issuing tax-exempt bonds which are solely secured by the land which the corporation owns. The credit of the City of Waco will not be pledged in any way to secure these bonds.

"The City of Waco does not contemplate proceedings under the provisions of Senate Bill 803, Acts of the 62nd Legislature. We request your opinions on the above two questions, therefore, without reference to this Act."

As you have stated that the City of Waco does not contemplate proceedings pursuant to Senate Bill 803, Acts 62nd Legislature, Regular Session (1971), chapter 840, page 2555 (Article 5190.1, Vernon's Civil Statutes--the Employment, Industrial and Health Resources Development Act of 1971), this Opinion will be rendered without reference to that Act.

Two constitutional provisions are at issue in the situation presented in your letter. One is Section 52, Subdivision (a) of Article III of the Constitution of Texas which provides:

"Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company."

The other provision at issue is Section 3 of Article XI of the Constitution of Texas, which provides:

"No county, city or other municipal cor-
poration shall hereafter become a subscriber
to the capital of any private corporation or
association, or make any appropriation or dona-
tion to the same, or in anywise loan its credit;
but this shall not be construed to in any way
affect any obligation heretofore undertaken
pursuant to law."

The Charter of the City of Waco grants the City broad
powers to adopt and implement measures deemed beneficial to the
City. It may provide, as a home rule city, anything not incon-
sistent with the Constitution and statutes. 39 Tex.Jur.2d 642-
644, Municipal Corporations, Sec. 312. Section 2 of Article I
of its Charter provides, in part, as follows:

"The City shall have all the power granted
to cities by the Constitution and Laws of the
State of Texas together with all of the implied
powers necessary to carry into execution such
granted powers . . . The powers hereby conferred
upon the City shall include, but are not restricted
to, the powers conferred expressly and permissively
by Chapter 147, Page 307, of the Acts of the 33rd
Legislature, Regular Session, enacted in 1913 pur-
suant to the Home Rule Amendment of the Constitu-
tion of Texas, known as the Enabling Act and in-
cluding Articles 1175, 1176, 1177, 1178, 1179,
1180 of the Revised Civil Statutes of Texas, 1925,
as now or hereafter amended, all of which are
hereby adopted. In addition to the powers
enumerated herein, and subject only to the
limitations imposed by the State Constitution,
the State laws, and this Charter, the City
shall have, without the necessity of express
enumeration in this Charter, each and every
power which, by virtue of Article XI, Section
V, of the Constitution of Texas the people
of the City are empowered by election to grant
to or confer upon the City by expressly and
specifically granting and enumerating the same
herein. . . ."

This office has been furnished with copies of: (a)
proposed authorizing resolution of the City Council of Waco
authorizing the incorporation of the Waco Industrial Parks

Corporation, (b)  proposed articles of incorporation of the Cor-
poration, (c)  proposed by-laws of the Corporation, (d) pro forma
copies of the bonds to be issued, and (e)  summary of the trust
indenture.

On examining the foregoing copies, we have noted that
no directors of the Corporation may be appointed without the advice
and consent of the City Council of Waco, and that neither the
articles of incorporation nor the by-laws of the Corporation may
be amended or restated, as the case may be, without the advice
and consent of the City Council of Waco.

Article 1396-3.01, Vernon's Civil Statutes, requires a
non-profit corporation, such as the proposed Waco Industrial Parks
Corporation, to be incorporated by three natural persons. We note
that Article IX of the proposed articles of incorporation provides
that any three of the initial twelve directors of the Corporation
are to serve as incorporators. Also, Article VI of the Articles
requires that the "corporation shall never have any members."

We are of the opinion that the foregoing instruments
clearly show that the City Council of Waco will have, through its
powers of advice and consent, perpetual, meaningful, and absolute
control over the directors, and affairs of, the proposed Corporation,
yet the City participation through the incorporators and directors
will not violate Article III, Section 52(a) or Article XI, Section
3 of the Texas Constitution.

Though the issues raised in your request for this opinion
are of first impression in this State, there are several earlier
Texas cases that are relevant by analogy.

In the case of Barrington v. Cokinos, 161 Tex. 136, 338
S.W.2d 133 (1960), the Supreme Court of Texas had occasion to
construe Section 3 of Article XI, supra, and held that a city could
legally contract to help pay for the substitution of railroad right
of way through town to eliminate some grade crossings, to be financed
by a bond issue authorizing same. In discussing the constitutional
provision, the Court said:

> "
>  . . .

> "Under the Constitution of 1896 and a
> statute enacted by the Legislature in 1871,
> the counties and municipalities of Texas were

authorized to aid such construction by taking
stock in and making loans or donations to rail-
road companies.  The primary purpose of Article
XI, Section 3, is to deprive these political
subdivisions of that power.  It does not pro-
hibit all business dealings with private cor-
porations and associations, but municipal funds
or credit may not be used simply to obtain for
the community and its citizens the general bene-
fits resulting from the operation of such an
enterprise.  On the other hand an expenditure
for the direct accomplishment of a legitimate
public and municipal purpose is not rendered
unlawful by the fact that a privately owned
business may be benefited thereby."  161 Tex.
at 145, 338 S.W.2d at 140.  (Emphasis added.)

In Bland v. City of Taylor, 37 S.W.2d 291 (Tex.Civ.App.),
affirmed 123 Tex. 39, 67 S.W.2d 1033 (1931), the court held that
the City of Taylor had the authority to establish a board of city
development (in effect, a chamber of commerce), out of public tax
funds, and that it was immaterial whether such board supplanted a
private association theretofore maintained by private subscription.
The court said:

". . . The effect of the Home-Rule Amendment
(art. 11, sec. 5) to the Constitution is to grant
to home-rule cities full powers to do by city
charters and ordinances, so long as same are not
in violation of the Constitution or general laws
of the state, all things which the Legislature
could theretofore have granted to them.  That is,
when the validity of a charter provision or or-
dinance of a home-rule city is called in question,
the inquiry is not whether there is express or
implied legislative authorization for same, but
whether such power of the city to so act is inhib-
ited by the Constitution. . .

"The provisions of the Constitution which
appellants assert are violated are:  Article 3,
Section 52; article 8, section 3; and article 11,
section 3.  . . .

"These *provisions clearly contemplate and
prohibit*, we think, benefits at public expense
attempted in behalf of individuals, corporations
or associations, as such, acting independently
and conducting some enterprise of their own, such
as are usually conducted for profit and commercial
in their nature. In the instant case, no aid was
attempted to the chamber of commerce, acting as an
independent association. The city undertook to,
and did, create said board of city development with
defined duties, not to aid any association, but as
a part of its municipal function. Obviously, we
think, there was no violation of article 3, section
52, nor of article 11, section 3, of the Constitution.

"If in fact said city had authority under the
Constitution and laws of the state to do the things
authorized by its charter, it is wholly immaterial
whether such board of city development supplanted
a private association theretofore maintained by
private subscription. . . ." 37 S.W.2d at 292-
93 . (Emphasis added.)

In the case of City of Sweetwater v. Geron, 380 S.W.2d
550 (Tex.Sup. 1964), the Supreme Court of Texas, by way of dictum,
said:

"Although the broad powers granted to home
rule cities by the Constitution, Article XI,
Section 5, Vernon's Ann.St., may be limited
by acts of the Legislature, it seems that should
the Legislature decide to exercise that authority
its intention to do so should appear with un-
mistakable clarity." 380 S.W.2d at 552.

In City of Corpus Christi v. Continental Bus Systems,
Inc., 445 S.W.2d 12 (Tex.Civ.App. 1969, no writ), the court held
that the City of Corpus Christi had power, as a home rule city,
to conduct a bus service outside its city limits and suburbs.
The court held that:

"Home Rule Cities have full power of self-
government, that is, full authority to do anything
the Legislature could theretofore have authorized
them to do, the result being that Home Rule Cities
look to the acts of the Legislature not for grants

of power to such cities but only for limita-
tions of their powers. Forwood v. City of
Taylor, 147 Tex. 161, 214 S.W.2d 282 (1948);
State of Texas ex rel Rose v. City of LaPorte,
386 S.W.2d 782, Tex.Sup. (1965), Art. 11, Sec. 5,
Texas Constitution.

"The Motor Bus Act, Art. 911a, V.T.C.S., re-
ferred to and relied upon by appellees as pro-
hibiting the operation of the City which were en-
joined defines in Sec. 1(a) the term 'corporation'
as meaning a 'corporation, company, association,
or joint stock association.' This definition
does not include a municipal corporation. The
decisions on this point are clear, authoritative
and recent. In The State of Texas v. Central
Power and Light Company, 139 Tex. 51, 161 S.W.2d
766 (1942), it was stated, 'While there are ex-
ceptions, depending on the peculiar wording of
the statute under consideration, as a general
rule the word 'corporation' is construed to
apply only to private corporations, and does
not include municipal corporations, unless
the statute expressly so provides.' This
case on this point has been followed without
question and was last cited and followed by
our Supreme Court in City of Houston v. Renault,
Inc., 431 S.W.2d 322 (1968)." 445 S.W.2d at 16.
(Emphasis added).

You have stated that the City of Waco will not be liable
for the indebtedness represented by the bonds to be issued. It
thus appears that the City's only involvement with the plan will
be relative to the chartering and the appointing of directors of
the non-profit corporation that operates the industrial park and
holds title to its property.

We are of the opinion that, under the above facts, there
is no lending of the city's credit, no granting of public money
or thing of value, that is prohibited by the Constitution.

With reference to the question of whether the City will
become a stockholder or subscriber to the capital of a private

corporation, and hence engage in an unconstitutional activity, we are of the opinion that the constitutional prohibitions do not apply to the situation outlined in your letter, inasmuch as the City will merely charter a no-stock non-profit corporation and there shall be no members of the corporation.

A leading treatise in the field of municipal law has stated:

"State constitutions usually deny, in express terms, power to the legislature to authorize any municipal corporation to lend its credit, or to grant public money or thing of value in aid of, or to any individual, association or company." 15 McQuillin on Municipal Corporations 67, Sec. 39.26 (1970).

The same treatise goes on, however, to state that "The constitutional prohibition is aimed at private, and not publicly owned, corporations." Id. at p. 68. (Emphasis added). The Waco Industrial Parks Corporation, caused to be chartered by the City, and having its Board of Directors appointed with the advice and consent of the Waco City Council, can logically be classified as a publicly-owned and controlled, non-profit corporation.

In continuing its discussion of the legality vel non of a municipality's lending its aid to a private enterprise, the same treatise goes on to state:

"Although 'charitable purposes' are excepted in some states from application of the constitutional prohibition, it seems to be a matter of dispute as to whether aid or gifts to non-profit enterprises are within a constitutional prohibition." Id. at p. 80, sec. 39.30. (Emphasis added.)

Because your request raises an issue of first impression in this State, we must look to the courts of our sister states in order to ascertain how the situation presented in your letter has been judicially resolved.

We believe the plan set forth in your letter can be legally sanctioned by applying the precedent of Cosentino v. City of Omaha, 183 N.W.2d 475 (Neb.Sup. 1971), to which we adhere. In that case, the Supreme Court of Nebraska upheld the validity of an

agreement for the treatment of packing house waste between the
City of Omaha and a non-profit corporation in a facility that was
financed by bonds issued by the non-profit corporation. The case
also expressly held that a city's directing credit to a public
purpose, with an incidental benefit to a private corporation, did
not violate the Nebraska constitutional prohibition against a
municipality's lending its credit to a private corporation. 183
N.W.2d at 479. But cf., Ontario v. Superior Court of San Bernardino
County, 466 P.2d 693 (Cal.Sup. 1970). See, generally, 152 A.L.R.
495 (1944), "Constitutional or statutory provisions prohibiting
municipalities or other subdivisions of the state from subscribing
to, or acquiring stock of, private corporation."

This office has heretofore held that a city and a county
had the joint authority to act as a community action agency or to
designate another group to serve as such under the Economic Oppor-
tunity Act of 1964 in order to carry out various anti-poverty
programs which were within the powers of the city and county.
Attorney General's Opinion No. M-689 (1970).

In view of the foregoing authorities, you are advised
that a home-rule city has the authority to cause to be formed a
non-profit corporation for the public and governmental purpose
of acquiring and improving land for industrial development under
the federal government's Model City's Program, whereby the City
of Waco will receive the benefit of planned industrial develop-
ment and other attendant benefits of commercial and industrial
expansion of the economy, including employment opportunities for
its citizens. The Legislature has recognized this governmental
purpose and created the Texas Industrial Commission to promote
and encourage industrial development within the state and aid
the various communities in this state in this purpose, including
the authority to plan, organize, and operate such a program.
Article 6144e, Section 4, and Article 5190 1/2, Vernon's Civil
Statutes. You are further advised that the proposed Waco In-
dustrial Parks Corporation may finance the acquisition and im-
provement of land for industrial sites by issuing * tax exempt-
bonds, which are privately financed and solely secured by the land
owned by the Corporation, provided the credit of the City of Waco
will not be pledged in any way to secure such bonds.

---

*We express no opinion on whether the bonds in question are in
fact tax exempt.

## S U M M A R Y

Pursuant to Section 52(a) of Article III and Section 3 of Article XI, of the Constitution of Texas:

(1)  A home-rule city has authority to cause to be formed a non-profit, no-stock, no-member corporation for the purpose of acquiring and improving land for industrial development; and

(2)  The proposed Waco Industrial Parks Corporation may finance the acquisition and improvement of land for industrial sites by issuing tax-exempt bonds which are solely secured by the land owned by the Corporation, provided the credit of the City of Waco is in no way pledged to secure such bonds.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Austin C. Bray, Jr.
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
Hal Sharpley
Mel Corley
James Broadhurst
Houghton Brownlee
Roger Tyler

SAM McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant