**CITY OF JACKSONVILLE, Appellant,**

v.

**ENTEX, INC., Appellee.**

No. 948.

Court of Civil Appeals of Texas,
Tyler.

June 10, 1976.

Rehearing Denied July 8, 1976.

Emerson Stone, Jr., Jacksonville, for appellant.

David Claflin, Entex, Inc., Houston, Gordon Thrall, Norman, Hassell, Spiers, Holland & Thrall, Jacksonville, for appellee.

McKAY, Justice.

The City of Jacksonville, appellant, brings this appeal from an adverse summary judgment rendered in favor of Entex, Inc., appellee.

The City of Jacksonville is a home rule city. Entex is a gas utility operating under a franchise from the City. Entex requested a rate increase which was approved by the City by ordinance on October 8, 1974. The City had employed a Dr. Jack Hopper, a rate consultant, to assist in the investigation of and hearing on the requested rate increase. The fee for Dr. Hopper's services was $4,865.00, which the City paid.

After the rate increase had been granted, the City made demand on Entex for reimbursement of Dr. Hopper's fee. The City alleged that it had a right to reimbursement pursuant to Article X, Section 6(8) of its city charter. Entex offered to pay the fee on the condition that the amount be deducted from the 2% gross receipts tax

which Entex owes the City. The City rejected this offer and filed suit for reimbursement.

During the trial, Entex filed a motion for summary judgment. Prior to the hearing on the motion, the parties stipulated to various matters among which were the following:

\* \* \* \* \* \*

"3. Entex makes the reports and occupation tax payments required by Section (1) of Art. 11.03 V.A.T.S. Gen.-Tax.

"4. Entex is current in its payment of the 2% gross receipts tax set forth in Section 7 of the franchise agreement approved September 29, 1969.

"5. \* \* \* The amount Entex paid to the City of Jacksonville as gross receipts for the year 1974 tax exceeded $4,050.00. (Sic)."

The trial court granted Entex's motion for summary judgment and the City brings this appeal.

The City's only point of error alleges that the trial court erred in granting Entex's motion for summary judgment because Article X, Section 6(8) of the city charter is controlling and created in the City the right to reimbursement for Dr. Hopper's fee. In this connection, the City points to the established rule that home rule cities have full power of self-government and have authority to do anything the Legislature could theretofore have authorized them to do, the result being that home rule cities look to acts of the Legislature not for grants of power to such cities but only for limitations on their powers. *City of Corpus Christi v. Continental Bus Systems, Inc.*, 445 S.W.2d 12 (Tex.Civ.App.-Austin 1969, writ ref'd n.r.e., 453 S.W.2d 470).

The provision of the charter on which the City relies provides:

"ARTICLE X. FRANCHISES AND PUBLIC UTILITIES

\* \* \* \* \* \*

"Section 6. Regulation of Franchise

"Every grant, renewal, extension or amendment of a public utility franchise, whether so provided in the ordinance or not, shall be subject to the right of the Council:

\* \* \* \* \* \*

"(8) To require such franchise holders who request an increase in rates, charges or fares, to reimburse the City for reasonable expenses incurred in employing rate consultants to conduct investigations, present evidence and advise the Council on such requested increase."

■ In considering appellant's point, we shall also consider and discuss appellee's counterpoints. Entex's second counterpoint contends that the summary judgment was correct because Section 7 of Entex's franchise from the City requires the City to credit any amount paid by Entex for charges "however designated" against the 2% of gross revenue Entex already pays the City. We disagree with this contention.

Section 7 of Entex's franchise states:

"SECTION 7. In consideration for the rights and privileges herein granted, Grantee agrees to pay to Grantor for each quarter of a year during the term of this franchise a sum equal to two per cent (2%) of the gross receipts collected by Grantee during such quarter from the sale of gas delivered in Grantor. Each payment shall be made within thirty (30) days after the end of the quarter (March 31, June 30, September 30, or December 31) to which such payment is attributable. For fractional quarters of a year, said two per cent (2%) shall be based upon the gross receipts as defined above for that part of the quarter involved. *Any special taxes, rentals or other charges, however designated, for the use by Grantee of Grantor's streets, alleys and other public ways and places,* accruing after the effective date of this franchise under the terms of any pre-existing or subsequently enacted ordinance (of either general application or application only to Grantee) *shall, when paid to Grantor, be credited to the amount owed by Grantee under the terms of this franchise.*" (Emphasis added.)

Section 7 merely requires that any charges, however designated, for the use of the City's streets, alleys and other public ways and places, be credited towards the 2% of gross receipts paid annually by Entex to the City. Reimbursement of Dr. Hopper's fee is not a charge for the use of the City's streets, alleys and other public ways and places. Therefore, Section 7 does not require the City to credit the reimbursement fee against Entex's annual payment of 2% of its gross receipts.

■ Entex's first counterpoint argues that Tex. Tax.-Gen.Ann. art. 11.03 (1969), bars the City from collecting "a charge of any kind" in excess of the 2% of gross revenue Entex already pays to the City. Insofar as pertinent, Article 11.03 provides:

> *"Art. 11.03 Gas, Electric Light, Power or Water Works*
>
>    \*     \*     \*     \*     \*     \*
>
> "(3) No city or other political subdivision of this State, by virtue of its taxing power, proprietary power, police power or otherwise, shall impose an occupation tax *or charge of any sort* upon any person, corporation, or association required to pay an occupation tax under this Article. *Nothing in this Article shall be construed as affecting* in any way the collection of ad valorem taxes authorized by law; *nor impairing or altering in any way the provisions of any contracts, agreements, or franchises now in existence, or hereafter made between a city and a public utility, relating to payments of any sort to a city.* Nothing in this Article shall be construed as prohibiting an incorporated city or town from making a reasonable charge, otherwise lawful, for the use of its streets, alleys, and public ways by a public utility in the conduct of its business, and each such city shall have such right and power; but any such charges, whether designated as rentals or otherwise, and whether measured by gross receipts, units of installation, or in any manner, shall not in the aggregate exceed the equivalent of two per cent (2%) of the gross receipts of such utility within such municipality derived from the sale of gas, elec-

tric energy, or water. \* \* \*" (Emphasis added.)

Article 11.03, Section 3, states as a general proposition that no city may impose an occupation tax or charge of any sort upon a corporation required to pay an occupation tax under this Article. Section 3, however, does go on to state three exceptions to this general proposition: (1) the collection of ad valorem taxes authorized by law; (2) payments to a city required under the provisions of any contracts, agreements, or franchises between a city and public utility; and (3) a reasonable charge for the use of a city's streets, alleys, and public ways not to exceed 2% of the gross receipts of such utility derived from the sale of gas, electric energy, or water within such municipality.

As previously noted, Entex already pays the occupation tax to the State as required by Section 1 of Article 11.03. Therefore, Article 11.03 appears to bar the City from requiring Entex to reimburse Dr. Hopper's fee unless the reimbursement charge comes under one of the three exceptions previously enumerated.

The reimbursement charge which the City seeks to impose is obviously neither an ad valorem tax nor a charge or rental for the use of the City's streets, alleys and public ways. Therefore, to be valid, the charge must have been provided for in the franchise or some other contract between the City and Entex. The franchise, the only agreement between the parties in the record, is silent concerning reimbursement for the consultant's fee. Entex did not agree or assent in the franchise to the reimbursement sought by the City. Consequently, the City's demand for reimbursement fails to come under one of the exceptions set out in Article 11.03.

We are of the opinion that the City's attempt to enforce Article X, Section 6(8) of the City's charter violates Article 11.03. The charter provision in question provides that the franchise holder shall be subject to the right of the City to require reimbursement "whether so provided in the ordinance or not." This provision of the City's charter

attempts to give the City the right to impose a charge in addition to the 2% gross receipts tax. Article 11.03 contemplates that charges in addition to the permissible 2% gross receipts tax (other than ad valorem taxes) shall be the subject of contracts negotiated by the parties and may not be imposed by the City in violation of Article 11.03. Article X, Section 6(8) of the City's charter is void insofar as it conflicts with Article 11.03. Tex.Const. art. XI, section 5.

The City's point of error is overruled. The judgment of the trial court is affirmed.