**Petition for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed October 24, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00833-CV

## IN RE LINDA P. MEYER AND POLYMER TRADING USA, LLC, Relators

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**133rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2014-59925**

## MEMORANDUM OPINION

On October 20, 2014, relators Linda P. Meyer and Polymer Trading USA, LLC filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, relators ask this court to compel the Honorable Mike Miller, ancillary judge of Harris County, to set aside the temporary restraining order he signed on October 15, 2014, on the application

of real party in interest Gulfstream Trading, Ltd. We conditionally grant the petition.[1]

## I. BACKGROUND

On October 14, 2014, Gulfstream filed an original petition, application for temporary restraining order, application for temporary injunction, and motion for expedited discovery against relators in the trial court. According to Gulfstream's petition,[2] Gulfstream is engaged in the trading of petroleum feedstocks and petrochemical byproducts. On May 1, 2013, Gulfstream hired Meyer as a full-time employee to engage in the trading of polymers on Gulfstream's behalf, a business Gulfstream had not conducted before hiring Meyers. Under an oral employment agreement, a Gulfstream affiliate was to provide a specified maximum amount of debt financing for its polymer trading activities directly to an entity called Polymer Trading USA ("Polymer Trading"), of which Meyer is sole owner. Meyer represented that she would need $3 to $6 million in funding to carry out the trading activities, and the profit margin would be five to seven percent. Meyer would receive twenty percent of the adjusted gross profit of the polymer trading activities, a monthly salary that would constitute a draw on the twenty percent figure, and health insurance.

Gulfstream alleges that payments from customers of its polymer trading activities were deposited in a Chase Bank account or sent directly to Polymer Trading. Gulfstream ultimately acquiesced to this arrangement only until bank

---

[1] This court requested a response to the petition from Gulfsteam, but none was filed. *See* Tex. R. App. P. 52.4.

[2] The facts stated herein are from Gulfstream's petition.

2

financing could be secured and Gulfstream opened its own bank account for these activities. Meyer granted Gulfstream's Chief Financial Officer ("CFO") access to Polymer Trading's bank account for monitoring. When Gulfstream's management asked Meyer to propose a revised employment arrangement, Meyer stated she intended to quit. On April 14, 2014, Meyer emailed Gulfstream's CFO that she was not coming back to the office. Meyer then terminated the CFO's ability to access Polymer Trading's bank account.

Meyer was advised to commence working on an "unwind plan," and on April 16, 2014, Meyer proposed a new employment agreement to Gulfstream to continue their business relationship. Gulfstream accepted Meyer's proposal on April 30, 2014, on the condition that all funds associated with the polymer trading activities flow through Gulfstream's accounts. A few days later, problems began to surface with trading contracts Meyer had executed, exposing Gulfstream to potential liability. On May 12, 2014, Meyer notified Gulfstream that she was unhappy with her compensation and claimed that they never had an agreement regarding compensation. Meyer further advised that, although she was receiving payments from customers, she did not feel comfortable with transferring the payments until all issues were resolved. Gulfstream terminated Meyer's employment and offered her severance and health insurance in exchange for Meyer's winding down the polymer trading activities. Meyer refused to sign the termination agreement, but Gulfstream, nonetheless, paid Meyers' severance through July 31, 2014, and paid for her health insurance through August 31, 2014.

Gulfstream alleges that Meyer has refused to transfer to it the $252,122.88 that she collected in connection with the polymer trading activities, and that Meyer

has transferred at least $41,566.11 to her personal checking account. Gulfstream sued relators asserting claims for breach of fiduciary duty, misappropriation of fiduciary assets, conversion, civil theft, and money had and received. The trial court conducted a hearing on October 15, 2014, at which no testimony or evidence was adduced, and signed the temporary restraining order, setting the temporary injunction hearing for November 3, 2014. As stated in the temporary restraining order, the trial court found:

1. The facts stated in Gulfstream's verified Application show that without injunctive relief Gulfstream will suffer damage constituting immediate and irreparable harm. Without immediate injunctive relief it is likely that Defendants will transfer money belonging to Gulfstream to Defendants' own personal checking account, modify, destroy, hide, or erase documents, financial records, or electronic information necessary to uncover and prove Defendants' unlawful acts against Gulfstream.

2. Gulfstream has no adequate remedy at law because, once any relevant information is modified, destroyed, hidden, or erased, it may be impossible to remedy or determine the impact of such actions. Moreover, if the money belonging to Gulfstream that is currently in Defendants' possession is spent, depleted, or otherwise transferred out of Defendants' bank accounts, it may impact Gulfstream's ability to recover.

In the temporary restraining order, the trial court enjoined relators from:

- deleting any and all emails pertaining to Gulfstream or any transaction related to [Meyer's] work on behalf of Gulfstream in any email account used by any defendant, or representative of any defendant, until an order is issued by the court at the hearing on Plaintiff's Application for Temporary Injunction;

- transferring any funds from PTUSA's Chase account; and

- transferring any funds that are attributable to Gulfstream trades from any financial account under [Meyer's] possession, custody, or control, up to $252.115.18.

In the temporary restraining order the trial court set the temporary injunction hearing for November 3, 2014, at 3:00, and set bond at $5,000.[3]

In their mandamus petition, relators complain that the temporary restraining order: 1) exceeds the 14-day time period allowed; and 2) fails to describe in reasonable detail the acts restrained.

## II. STANDARD OF REVIEW

Generally, to be entitled to mandamus relief, a relator must demonstrate (1) the trial court clearly abused its discretion; and (2) the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). When an order is void, the relator need not show that it lacks an adequate remedy by appeal. *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (per curiam).

---

[3] In the temporary restraining order the trial court further directs relators, by 5:00 p.m., on October 20th, to give Gulfstream access to review and copy financial records relating to deposits and withdrawals of Gulfstream funds to or from Polymer Trading's Chase account from April 1, 2014, to October 15, 2014, and such access would only be given in the presence of Meyer, Meyer's counsel, and an attorney for Gulfstream. It is not known from the record whether the review of the financial records took place.

## III. ANALYSIS

In their first issue, relators point out that the TRO does not state when it expires. In their second issue, relators contend that the temporary restraining order is void because it lacks the necessary specificity. We agree. Pursuant to Rule 683, a temporary order must (1) set forth the reasons for its issuance; (2) be specific in terms; (3) describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained. Tex. R. Civ. P. 683. A temporary restraining order "must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing." *Villalobos v. Holguin*, 208 S.W.2d 871, 875 (Tex. 1948). However, the order need not be "full of superfluous terms and specifications adequate to counter any flight of fancy a contemnor may imagine in order to declare it vague." *Ex parte McManus*, 589 S.W.2d 790, 793 (Tex. App.—Dallas 1979, orig. proceeding).

The temporary restraining order in this case does not identify (1) Polymer Trading's Chase Bank account by account number; (2) the funds attributable to Gulfstream trades; (3) or the financial accounts under Meyer's possession, custody, or control by bank name and account number or any other specific means of identification. Relators are left to draw inferences and conclusions regarding the specific funds and specific location of those funds about which persons might differ. *See In re Krueger*, No. 03-12-00838-CV, 2013 WL 2157765, at *7 (Tex. App.—Austin May 16, 2013, orig. proceeding) (mem. op.) (holding that temporary injunction was void because it violated Rule 683's specificity requirements—it did

not describe bank accounts in reasonable detail with names of banks, account numbers, or current status of the accounts).  Moreover, the order does not specify when it expires.  We hold that the temporary restraining order is void for lack of specificity and sustain relators' second issue.

## IV. CONCLUSION

Having sustained relators' second issue and determined that the October 15, 2014 temporary restraining order is void, we conclude that the trial court abused its discretion by signing the order.[4]  *See Sw. Bell. Tel. Co.*, 35 S.W.3d at 605 (stating that signing a void order is an abuse of discretion).  Therefore, we conditionally grant the petition for writ of mandamus and order the trial court to vacate the October 15, 2014 temporary restraining order.  The writ will only issue if the trial court does not act in accordance with this opinion.


PER CURIAM

Panel Consists of Chief Justice Frost and Justices Christopher and Busby.

---

[4] Relators also assert in a third issue that the temporary restraining order is overbroad and restrains lawful activity because it denies Meyer access to any funds in her personal account for living expenses.  In light of our disposition of relators' first and second issues, we need not address this issue.